556 A.2d 4

Verland C.L.A., Inc., Appellant *v.* Zoning Hearing Board of The Township of Moon, Appellee.

Argued February 6, 1989, before Judges COLINS and McGINLEY, and Senior Judge BARBIERI, sitting as a panel of three.

■ Held: Affirmed. Application for reargument filed and denied.

*Richard J. Klixbull, Brennan, Robins & Daley,* for appellant.

*Charles M. Means, Markel, Schafer & Means, P.C.,* for appellee.

OPINION BY SENIOR JUDGE BARBIERI, March 13, 1989:

Verland C.L.A., Inc. (Verland) appeals an order of the Allegheny County Court of Common Pleas dismissing its appeal of a decision of the Zoning Hearing Board of the Township of Moon (Board) denying its request for a variance from the spacing requirement for a group residence facility and its validity challenging to this provision of the local zoning ordinance.

Verland is a Pennsylvania non-profit corporation which operates eight family community living arrangements (C.L.A.s) in Allegheny County under contract with the County Mental Health, Mental Retardation, Drug and Alcohol Program.[1]

---

[1] As we noted in *Step-By-Step, Inc. v. Zoning Hearing Board of the Borough of McKees Rocks,* 117 Pa. Commonwealth Ct. 547, 543

In March of 1986, Verland purchased a residence at 217 Winridge Drive in the Township for use as a C.L.A. The proposed C.L.A. would serve as a home for three mentally retarded residents and would be staffed by individuals who assist the residents in their daily activities.

The property is zoned R-1 Residential and in March of 1987, Verland moved its residents into the home, assuming the C.L.A. would qualify as a single-family residence. Shortly thereafter, the Township advised Verland that it was in violation of Section 600.5(d)[2] of the Ordinance. Although Section 600.5 of the Ordinance conditionally allows group residence facilities in all residential zoning districts and commercial districts which are contiguous thereto, subsection (d) requires that such a facility may not be located less than one mile from any other. The distance is to be measured by drawing a circle with a one mile radius around the proposed facility. Measured this way, the property in question is within 1800 feet of another group residence.

The Township sought to enjoin Verland's use of the premises as a C.L.A. However, by way of a consent order dated March 20, 1987, the hearing on the summary injunction was continued and the residents temporarily allowed to remain in the home on the condition that Verland seek a variance. The Board denied Verland a variance from the spacing requirement and the trial court dismissed Verland's appeal. This appeal followed.

---

A.2d 1293 (1988), a C.L.A. is a program under the Pennsylvania Department of Public Welfare which places mentally retarded individuals into a family-like setting.

[2] This provision along with that defining group residence facilities was added to the Ordinance by way of Township Ordinance No. 239 adopted March 13, 1985. Section 600.5(d) of the Ordinance refers to Section 11(d) of Ordinance No. 239.

Section 501.5 of the zoning ordinance (Ordinance) defines "single-family dwelling" as:

A separate, detached building designed for or occupied exclusively as a residence by one family.

"Family" is defined in Section 501.8 of the Ordinance as:

One or more persons occupying a premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, club, fraternity or hotel.

A "group residence facility" is defined in Section 501.41 of the Ordinance which reads in pertinent part:

An establishment that provides room and board to persons who are residents by virtue of receiving supervised specialized services limited to health, social and/or rehabilitative services provided by a governmental agency, their licensed or certified agents or any other responsible nonprofit social service corporation. These services shall be provided in a family environment and only to persons who are children under eighteen years of age; physically or mentally handicapped of any age . . . who are in need of supervision and specialized services. . . . Supervision shall be provided by responsible adults. . . . However, one responsible adult shall always be in actual residence on a twenty-four hour a day basis. . . .

On appeal, Verland contends that it qualifies as a single-family residence rather than a group residence facility under the Ordinance. It further maintains that the one mile spacing requirement between group residence facilities in the Ordinance is exclusionary and arbitrary as well as in violation of the 1988 amendments to Title VIII of the Civil Rights Act of 1968. In the alternative, Verland argues that it should be granted a variance as the distance

between it and the nearest group residence facility is *de minimis.*[3]

We have previously held that three C.L.A.s, each designed for three mentally handicapped residents, constituted rooming houses rather than single-family residences under the local zoning ordinance. *Step-By-Step, Inc.* In that case, Step-By-Step sought to operate a C.L.A. in a residential district where special use permits were required for rooming houses.

Step-By-Step, Inc. argued that the properties were being used as residential family units rather than boarding houses. "Family" was defined under the Borough of McKees Rocks' zoning ordinance as one or more persons related by blood together with their blood relatives and respective spouses. We held that as the C.L.A. residents were not related by blood, required twenty-four hour assistance of Step-By-Step employees, paid under a room and board agreement, and were not placed in the residence permanently, that there was substantial record evidence to support a conclusion that the C.L.A. was a rooming house rather than a single-family residence.

In the present case, the Board found that Verland provides room and board to its residents along with specialized health, social and rehabilitative services. At the time of the hearing before the Board, three mentally retarded individuals, ages 13, 16, and 19, were residing in the residence at 217 Winridge Street. The Board also found that the home is staffed by individuals who assist and supervise the residents and there is one staff person on duty at all times. Further, Verland's Project Director

---

[3] Where, as here, the trial court took no additional evidence, our scope of review is limited to determining whether the Board committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

admitted that she could not predict how long each individual would remain in the home.[4]

As was the case in *Step-By-Step*, Verland's C.L.A. does not qualify as a single-family residence. Instead, it falls squarely within the definition of a group residence facility and is therefore subject to the one mile spacing requirement of Section 600.5(d) of the Ordinance.

Verland next contends that the one mile spacing requirement in Section 600.5(d) of the Ordinance is unconstitutional in that it fails to promote any public health, safety, or welfare interests and is therefore unreasonable and arbitrary.

Zoning ordinances are presumed to be valid and the burden of proving otherwise is on the party challenging the ordinance. *Boundary Drive Associates v. Shrewsbury Township*, 507 Pa. 481, 491 A.2d 86 (1985). A zoning ordinance is valid if it promotes public health, safety or welfare and if its provisions are substantially related to the purpose it is to serve. *Id.* If the validity of the provision in question is fairly debatable, the provision must be upheld. *Owens v. Zoning Hearing Board of the Borough of Norristown*, 79 Pa. Commonwealth Ct. 229, 468 A.2d 1195 (1983).

A review of the record reveals that Verland did not prove that the one mile distance constituted an unreasonable limitation on the number of C.L.A.s in the Township. Further, the Board found that one of the purposes of the one mile spacing requirement as applied to a residential district is the preservation of a family type community atmosphere and the accompanying preservation of property values.

The Director of the Allegheny County Mental Health, Mental Retardation, Drug and Alcohol Program

---

[4] *See* Notes of Testimony from May 20, 1987 hearing before the Board at 23-24.

testified before the Board that in order to further the concept of "normalization" it was desirable to keep the population of mentally handicapped individuals "thinned out" by spreading the C.L.A.s throughout the County.[5]

We have recently held that preventing oversaturation of any area by group homes for retarded persons was a valid purpose and therefore the definition of "family" as individuals living and cooking together as a single house-keeping unit where no more than two are unrelated by blood, marriage or adoption, was clearly not an arbitrary and unreasonable provision of the zoning ordinance. *Appeal of Lynch Community Homes, Inc.*, 123 Pa. Commonwealth Ct. 278, 554 A.2d 155 (1989).

We agree with the Board that the one mile spacing meets the legitimate public purposes of opening up zoning districts to C.L.A.s while at the same time, avoiding an unduly high concentration of such group residences in any one area by spreading them throughout the Township.

Verland appears to be arguing that the Ordinance is exclusionary as well as arbitrary since it maintains that the one mile spacing requirement is an attempt to zone out the mentally retarded. As the Board found, Section 600.5(d) does not exclude C.L.A.s from the Township but allows them in all residential zoning districts[6] subject to the one mile spacing requirement. The Board found further that the Township has a density of 2.15 of mental health and mental retardation residents per 1,000 people

---

[5] N.T. at 39-40. The Director stated that he disagreed with the Township as to what constitutes "thinned out". However, the issue of what best serves the public interest is for the legislative entity. *See Mobil Oil Company Appeal*, 21 Pa. Commonwealth Ct. 295, 345 A.2d 313 (1975).

[6] The Ordinance also permits C.L.A.s in commercial districts which are contiguous to residential districts.

compared to an average density of .82 residents per 1,000.26 in Allegheny County as a whole. Also, the Township has approximately 1.437% of the County's population and approximately 4% of its C.L.A.s. Thus there is substantial evidence to support the Board's finding that the Township has allowed for its fair share of C.L.A.s.

Verland next maintains that the one mile spacing requirement violates Sections 6 and 13 of the Fair Housing Amendments Act of 1988, (Amendments), 42 U.S.C. §3604(4)(f), which makes it illegal:

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . (B) a person residing in or intending to reside in that dwelling. . . . or (C) any person associated with that buyer or renter.

Pursuant to Section 13 of the Amendments, 42 U.S.C. §3601, the Act does not take effect until March 12, 1989. As there is no cause of action pursuant to the Amendments at this time, we will not address the effect that they may or may not have on spacing requirements for group residence facilities for mentally handicapped persons.

Lastly, Verland argues that the variance should be granted as *de minimis*. In support of this contention, Verland states that the residence is 8/10ths of a mile in "road distance" from the nearest group residence facility. Section 600.5(d) of the Ordinance itself states that a group residence facility may not be within a one mile *radius* of another such facility[7] and the proposed C.L.A. is only within 1800 feet of another group residence facility when measured in this manner. As a mile is equivalent to 5,280

---

[7] The Ordinance would allow a group residence facility that was located exactly one mile from another but not within that one mile radius.

feet, a dimensional variance would have to be granted for 3,480 feet. Certainly such a distance is not *de minimis*.

In light of the forgoing reasoning, the order of the trial court is affirmed.

## ORDER

AND NOW, this 13th day of March, 1989, the order of the Allegheny County Court of Common Pleas dated July 7, 1988, at No. S.A. 2594 of 1987, dismissing the appeal of Verland C.L.A., Inc. from the decision of the Zoning Hearing Board of the Township of Moon, is affirmed.