636 A.2d 1232

Mark J. FARLEY and Gary J. Farley, Appellants,

v.

ZONING HEARING BOARD OF LOWER
MERION TOWNSHIP.

Francis A. McMANUS, Appellant,

v.

The ZONING HEARING BOARD OF LOWER MERION
TOWNSHIP and the Township of Lower Merion.

David WEIDNER, Evan Avgerinos, and
Donald Avgerinos, Appellants,

v.

ZONING HEARING BOARD OF LOWER
MERION TOWNSHIP.

Patrick and Frances GIBBONS, Appellants,

v.

The ZONING HEARING BOARD OF LOWER MERION
TOWNSHIP and Lower Merion Township.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1993.

Decided Jan. 6, 1994.

Reargument Denied Feb. 25, 1994.

230

Michael J. Malloy, Frank H. Morgan, Jr. and G. Michael Green, for appellants Farley, McManus, Weidner, Avgerinos and Gibbons.

Sean P. Flynn for appellee, Zoning Hearing Board of Lower Merion Tp. and Lower Merion Tp.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

SMITH, Judge.

Mark J. Farley and Gary J. Farley (Farley), Francis A. McManus (McManus), David Weidner (Weidner), Evan Avgerinos and Donald Avgerinos (Avgerinos), and Patrick and Frances Gibbons (Gibbons) (collectively, Appellants) appeal from an order of the Court of Common Pleas of Montgomery County affirming the decision of the Zoning Hearing Board of Lower Merion Township (Board) which denied Appellants' challenge to the validity of the Lower Merion Township Ordinance No. 3199 (Ordinance). The issues presented in this appeal are whether the Ordinance is valid under Article I, Sections 1 and 26 of the Pennsylvania Constitution; whether the Ordinance unduly restricts the housing stock available to student residents of the municipality and the region violating Article I, Section 1, of the Pennsylvania Constitution; whether this Court is estopped from considering Appellants' federal constitutional issues; and whether the Ordinance violates federal constitutional principles of equal protection and due process.

## I.

The Ordinance provides, in pertinent part, that student homes may be permitted as special exceptions and defines "student home" as:

A living arrangement for students, unrelated by blood, marriage or legal adoption, attending or about to attend a college or university or who are on a semester or summer break from studies a [sic] college or university, or any combination of such persons. Student homes shall not include fraternities, sororities or community residential programs.

Section 1 of the Ordinance. Section 3(S)(5) restricts the number of student occupants to "no more than three (3) students located in a dwelling with a floor area of at least one thousand five hundred (1500) square feet, exclusive of basements, garages and accessory buildings"; and Section 3(T), (U) provides:

T. No [student home] shall be permitted if another [student home] is located in any Residential Zoning District except R–7 and within 500 feet, measured by the shortest distance between the lot on which the proposed use will be located and the lot or lots which contain the existing use.... Student homes shall also be subject to the spacing provisions of Section 155–141.3.

U. In districts which have more than a single set of area and width regulations, community residential programs and student homes shall meet the area and width regulations for single-family dwellings, except that student homes are not permitted in structures designed as townhouses.

Section 4(W) requires that student homes have three parking spaces for each home occupying a premises.

Appellants own residential rental units located in Lower Merion Township (Township) and have been cited by the Township for renting to students in violation of the Ordinance. Appellants filed respective challenges before the Board. Weidner and Avgerinos incorporated into their challenge the record produced in Farley's challenge, and McManus incorporated into his challenge the records produced in the challenges of Farley, Weidner and Avgerinos. The Board found, in relevant part, that when compared to other unrelated cohabitating individuals, groups of students have different hours, work and social habits; and frequently cause noise, distur-

bance and problems in residential neighborhoods. A concentration of student homes changes the character of a neighborhood from one with traditional family values to one that cannot maintain those values; and approximately ninety percent of the Township's student homes are concentrated in two areas of the Township which displaces middle and lower income housing by absorbing housing units and rendering the remaining units less desirable for more traditional residential use.

In addition, the Board found that the Township had approximately 120 registered student homes and that there are areas in the Township where student homes can be located and meet the requirements of the Ordinance. The Board determined that goals of the Ordinance include the promotion and protection of the public health, safety and general welfare of the Township's citizens by avoiding an institutional atmosphere caused by oversaturation of areas with student homes and preserving the residential character of neighborhoods. The Board concluded that because it is "fairly debatable" that the ordinance bears a rational relationship to those legitimate governmental interests, the Ordinance is valid.

Appellants filed respective appeals to the trial court and McManus, Farley, and Gibbons also sought a preliminary injunction and temporary restraining order in the United States District Court for the Eastern District of Pennsylvania against the Township, challenging the constitutionality of the Ordinance pursuant to the United States Constitution. The parties to the federal action filed cross-motions for summary judgment. The court determined that McManus, Farley and Gibbons were not entitled to a preliminary injunction because they failed to prove that the Ordinance was not rationally related to a legitimate government interest or unconstitutionally vague, granted the Township's motion, and dismissed the action in a memorandum opinion, *Smith v. Lower Merion Township*, No. 90–7501, 1992 WL 112247, (E.D.Pa. May 7, 1992), *aff'd*, 995 F.2d 219 (3d Cir.1993).

The trial court consolidated Appellants' appeals and determined that McManus, Farley and Gibbons were collaterally estopped from asserting their federal constitutional claims

based upon the district court's decision in *Smith.* As to Weidner and Avgerinos' federal constitutional claims and all Appellants' state constitutional claims, the trial court held that the Ordinance is not unconstitutionally vague, does not unconstitutionally and arbitrarily distinguish student tenants from other residential property users, and is not exclusionary because it does not preclude student home use in the Township.

On appeal to this Court, Appellants maintain that constitutional challenges to zoning ordinances require heightened scrutiny and regulations must be "clearly necessary" to preserve the health, safety, morals or general welfare of the community. Appellants argue that the Ordinance constitutes an arbitrary, unnecessary and unreasonable intermeddling with private ownership of property, unconstitutionally imposes different conditions on like residential rental properties based solely upon the vocation of the tenants, and unlawfully excludes student-occupied residential living units and development. Further, Appellants argue that this Court is not precluded from considering these constitutional issues because the district court judge in *Smith* either misunderstood the Ordinance or reviewed the wrong ordinance; and this Court may apply a more restrictive constitutional analysis under the Pennsylvania Constitution than the judge in *Smith* applied under the United States Constitution.[1]

## II.

When the constitutionality of a zoning ordinance is challenged, there is a presumption that the ordinance is valid and the party challenging its validity has a heavy burden to prove that it is unconstitutional. *Layne v. Zoning Board of Adjustment of Pittsburgh,* 501 Pa. 224, 460 A.2d 1088 (1983); *Jones v. Zoning Hearing Board of McCandless,* 134 Pa.Commonwealth Ct. 435, 578 A.2d 1369 (1990). An ordinance is

1. Where the trial court received no additional evidence on a zoning appeal, this Court's scope of review is limited to a determination of whether the Board abused its discretion or committed an error of law. *In re Hoover,* 147 Pa.Commonwealth Ct. 475, 608 A.2d 607 (1992). Further, this Court cannot disturb findings of the Board if based upon substantial evidence. *Boundary Drive Assoc. v. Shrewsbury Township Board of Supervisors,* 507 Pa. 481, 491 A.2d 86 (1985).

valid if it promotes public health, safety or welfare and its provisions are substantially related to the purpose it is to serve. *Verland C.L.A., Inc. v. Zoning Hearing Board of Moon,* 124 Pa.Commonwealth Ct. 150, 556 A.2d 4, *appeal denied,* 524 Pa. 615, 569 A.2d 1372 (1989); *Lynch Community Homes, Inc. Appeal,* 123 Pa.Commonwealth Ct. 278, 554 A.2d 155, *appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989). Further, the lack of any rational relationship to a legitimate governmental purpose must be obvious, *Layne;* and if validity is debatable, the provision must be upheld. *Lynch Community Homes.*[2]

Procedurally, Appellants argue that this Court may address their constitutional issues because the federal court either misinterpreted the Ordinance or interpreted the wrong ordinance. Although the trial court decided Appellants' appeal on the merits, it expressed doubt regarding Appellants' standing to raise their challenges based upon the equal protection and due process clauses. These issues will be discussed seriatim.

2. Appellants cite *Medinger Appeal,* 377 Pa. 217, 104 A.2d 118 (1954), in support of their argument that the test this Court should apply is whether the regulations are "clearly necessary" to preserve the health, safety or morals of the community. However, a close reading of *Medinger* reveals that the test which was applied in that case was not whether the ordinance was "clearly necessary" but whether the powers granted under the local enabling act and ordinance in question may have been promulgated "for the purpose of promoting the health, safety, morals or the public welfare as specifically prescribed by the Act." *Id.* at 224, 104 A.2d at 122. *See Orwell Township Supervisors v. Jewett,* 132 Pa.Commonwealth Ct. 30, 571 A.2d 1100 (1990). Further, it is well established that zoning legislation, being economic and social legislation, is scrutinized using a rational relationship test, *see Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (ordinance valid if reasonable, not arbitrary, and bears a rational relationship to a permissible state objective); unless heightened scrutiny is required as either a suspect class or a fundamental right is involved. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Lyles v. City of Philadelphia,* 88 Pa.Commonwealth Ct. 509, 490 A.2d 936 (1985), *aff'd,* 512 Pa. 322, 516 A.2d 701 (1986). Appellants have not argued to this Court that students are either a suspect class or that fundamental rights are involved. *See Boraas* (fundamental rights of association or privacy were not involved in a challenge by students to an ordinance limiting the number of unrelated cohabiting persons). Thus, the trial court did not err by applying the rational relationship test in this matter.

a.

 Collateral estoppel bars relitigation of an issue where a question of law or an issue of fact essential to a judgment is actually litigated and determined by a court of competent jurisdiction. *Three Rivers Aluminum Co., Inc. v. Zoning Hearing Board of Marshall Township*, 152 Pa.Commonwealth Ct. 203, 618 A.2d 1165 (1992). Collateral estoppel applies only when the following elements are present: 1) the issue decided in the prior case must be identical to the issue in the present case; 2) there was a final judgment on the merits; 3) the issue must be essential to the judgment; 4) the party against whom estoppel is asserted must have had a full and fair chance to litigate on the merits; and 5) the party against whom estoppel is asserted must be a party or in privity with a party in the prior case. *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 559 A.2d 896 (1989).

 The issues in Appellants' federal action included whether the Ordinance violated the equal protection clause of the United States Constitution by treating students differently than other unrelated cohabitants, and the due process clause of the United States Constitution because the term "student home" was impermissibly vague. These issues are identical to two of the issues raised in this appeal. Further, Farley, McManus and Gibbons had a full and fair opportunity to litigate these issues on the merits; and their disposition was essential to the district court's final judgment that Farley, McManus and Gibbons were not entitled to a preliminary injunction or a temporary restraining order. Therefore, the doctrine of collateral estoppel bars the challenges to the Ordinance filed by Farley, McManus and Gibbons based on federal constitutional grounds; but does not however bar the challenges of Weidner and Avgerinos as the Township has failed to establish that they were in privity with Farley, McManus and Gibbons in the federal action.

 Appellants' argument that the district court's ruling in *Smith* does not bar the federal constitutional claims of Farley, McManus and Gibbons because the judge interpreted

the wrong ordinance is without merit because it is clear from the opinion that the Ordinance at issue here was before the court, as relevant parts of its text are set forth in the court's slip opinion in *Smith* at 2–3 n. 1. Further, any challenge to the interpretation of the Ordinance set forth in *Smith* had to be raised in an appeal from that decision and is not relevant to whether the doctrine of collateral estoppel bars relitigation of the issues in a subsequent case. Since issues remain as to whether the Ordinance violates the equal protection and due process clauses of the United States and Pennsylvania Constitutions, the constitutional analysis in the federal and state context will be combined.[3]

b.

In order to establish standing, a party need only allege that he or she has an immediate, direct and substantial interest in the subject matter of the litigation. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975); *In re Hoover*, 147 Pa.Commonwealth Ct. 475, 608 A.2d 607 (1992). Furthermore, Sections 909.1(a)(1) and 913.3 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by Sections 87 and 93 of the Act of December 21, 1988, P.L. 1329, 53 P.S. §§ 10909.1(a)(1) and 10913.3, allows, inter alia, that landowners affected and persons aggrieved by land use ordinances may file substantive challenges to the validity of those ordinances. Appellants clearly confirmed that they had standing to challenge the Ordinance when they testified that they are landowners who rent to students and that they have been cited for renting to students in violation of the Ordinance.

---

**3.** Although guidelines for interpreting the federal constitution set forth by the United States Supreme Court are not binding upon this Court's interpretation of the Pennsylvania Constitution, it should be guided by those principles. *See Fischer v. Department of Public Welfare*, 509 Pa. 293, 502 A.2d 114 (1985). Further, in the equal protection area, the Pennsylvania Supreme Court has adopted the standards and analysis of the United States Supreme Court in order to interpret and apply Article I, Section 26 of the Pennsylvania Constitution. *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986).

III.

Appellants argue that the Ordinance is invalid in that it unconstitutionally and arbitrarily distinguishes student tenants from other residential property users. Appellants rely upon *Sullivan v. City of Pittsburgh*, 811 F.2d 171 (3d Cir.1987), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987), in support of their argument that the Ordinance should be declared unconstitutional because the Township failed to prove why three non-students can live together while three students cannot. In order to sustain an equal protection claim under the Pennsylvania Constitution, Appellants must show that the Ordinance is arbitrary and unreasonable and has no substantial relationship to the public health, safety, morals or general welfare. *Lynch Community Homes.*

This Court held in *Lynch Community Homes* that preventing oversaturation of an area by group homes for mentally handicapped persons by providing spacing requirements between homes constituted a valid purpose and therefore the definition of "family" as "individuals living and cooking together as a single housekeeping unit where no more than two are unrelated by blood, marriage or adoption" was not an arbitrary or unreasonable provision of the zoning ordinance. In addition, "preservation of the character and integrity of single-family neighborhoods, prevention of undue concentration of population, prevention of traffic congestion and maintenance of property values" are all legitimate purposes of zoning. *Lantos v. Zoning Hearing Board of Haverford Township*, 153 Pa.Commonwealth Ct. 591, 621 A.2d 1208 (1993) (citing *Boraas* ).

In *Sullivan*, a group of recovering alcoholics challenged an ordinance which changed the definition of group home and sought preliminary injunctive relief to prevent the city from closing alcoholic treatment centers. The Third Circuit Court of Appeals affirmed the district court's grant of a preliminary injunction and order requiring the city to issue various zoning and building permits. The court determined that the challengers were likely to succeed on their claim that the ordinance had no rational basis to a governmental interest because

review of the record indicated that the city's concern about a drop in property values and orderly development were irrational; the facilities in question met lot size and other zoning requirements; and the city took its unjustified action in an atmosphere charged with hostility towards alcoholics.

In the matter sub judice, the Board was presented with evidence that approximately 120 student homes were licensed in the Township and that these homes were concentrated in relatively small geographic areas in South Ardmore and Bryn Mawr. Neighbors of student homes testified how the residential character of their neighborhood has diminished since student homes have located in their neighborhoods, giving way to a "dormitory-like" atmosphere. Specifically, neighbors testified about excessive noise from radios, stereos and parties that last through the early morning hours; cars parked on sidewalks which force neighborhood children to walk or ride their bicycles in the street in order to pass student houses; constant traffic and parking congestion; trash left on the premises of student houses as well as scattered on neighbors' properties; and public urination. One neighbor also testified that his property has lost value since student housing proliferated on his street.

Contrary to the lack of evidence presented in *Sullivan*, the neighbors' testimony constitutes substantial evidence to support the Board's determination that the Ordinance was enacted to preserve the residential character and integrity of Township neighborhoods, and a determination that the classification of student homes was not arbitrary or unreasonable. As to whether the Ordinance rationally furthers the Township's interest, this Court recently upheld the constitutionality of an ordinance which provided that single-family residences could be used for student housing by special exception when certain physical requirements such as spacing, minimal square footage and off-street parking were met because the ordinance was rationally related to the legitimate purpose of preserving the integrity of single-family neighborhoods. *Lantos*. Similarly, the provisions in the Ordinance limiting the number of students, providing for minimal square footage in a home, and

requiring sufficient parking spaces and distance between homes are rationally related to the Township's legitimate purpose of preventing oversaturation of areas within the Township with student homes in an attempt to preserve the residential character and integrity of those communities.

## IV.

 Appellants also argue that the Ordinance is unconstitutionally vague because it is not clear whether the Ordinance applies to part-time as well as full-time students and therefore it is impossible to determine who is a student under the definition of student home. An ordinance is unconstitutionally vague and violates due process when persons of common intelligence must guess at its meaning. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Chester v. Elam*, 408 Pa. 350, 184 A.2d 257 (1962). Vague ordinances "proscribe activity in terms so ambiguous that reasonable persons may differ as to what is actually prohibited," and invite arbitrary and discriminatory enforcement because they do not set reasonably clear guidelines for law officials and courts. *Scurfield Coal, Inc. v. Commonwealth*, 136 Pa.Commonwealth Ct. 1, 7, 582 A.2d 694, 697 (1990). Difficulty in establishing whether a situation falls within the penumbra of statutory language which is challenged as vague does not render the language unconstitutional unless it "fails to convey sufficiently definite warning as to proscribed conduct when measured against common understanding and practices." *Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board*, 120 Pa.Commonwealth Ct. 528, 531–32, 549 A.2d 251, 253 (1988). Thus, the term "student" must be construed according to common and approved usage. *Bradley v. Township of South Londonderry*, 64 Pa.Commonwealth Ct. 395, 440 A.2d 665 (1982).

While the Ordinance does not define student, it unquestionably applies to college students because Section 1 of the Ordinance provides that student homes are living arrangements for college students. The Township zoning officer testified that the term student in the Ordinance applies to full-

time college students and that the fundamental test he employs to determine if an individual is a student is to examine the individual's primary occupation. He stated that if an individual is employed full-time while taking college credits, that individual does not fall under the definition of student for purposes of the Ordinance; and that he has never applied the Ordinance to part-time students. In addition, the zoning officer stated that he can determine whether an individual is a student because property owners are required to register all rental properties within the Township and must disclose whether the tenants are students, and he can also check registrations, student directories or ask residents.

The landowners did not establish that they must guess in order to determine which tenants constitute students for purpose of the Ordinance because McManus, Gary Farley and Patrick Gibbons admitted that they knew which of their tenants were college students and could distinguish students from non-students when interviewing prospective tenants. Further, since the zoning officer is able to determine who is a full-time student, he is able to apply the Ordinance in a non-discriminatory way to full-time students. Therefore, the Ordinance is not unconstitutionally vague when measured against common understanding and practices because it provides landowners with fair notice that the Township will consider tenants whose primary occupation is "student" subject to the Ordinance.

## V.

Appellants' final argument is that the Ordinance only provides a "token" amount of student home use and therefore unconstitutionally excludes student home use in the Township. Appellants argue that since the total number of dwelling units in the Township is between 20,000 and 25,000, the Ordinance has impermissibly frozen the growth in student homes to the 120 homes currently licensed.

In order to assess whether a zoning regulation renders a partial exclusion of a particular type of use, the Pennsylvania Supreme Court has developed a "fair share" analysis.

*McKown v. Board of Supervisors of East Fallowfield Township,* 104 Pa.Commonwealth Ct. 428, 522 A.2d 159 (1987), *aff'd,* 518 Pa. 467, 544 A.2d 446 (1988). In *Surrick v. Zoning Hearing Board of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977), the Court set forth the three-part inquiry: whether the community in question is a logical area for development and population growth; what is the present level of development within the community; and whether the ordinance effects an exclusionary result.

■ The party challenging the ordinance has the burden to show the lack of a fair share of a particular type of zoning. *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Commonwealth Ct. 659, 606 A.2d 960 (1992), *appeal denied,* 533 Pa. 639, 621 A.2d 584 (1993); *East Marlborough Township v. Jensen,* 139 Pa.Commonwealth Ct. 297, 590 A.2d 1321, *appeal denied,* 529 Pa. 637, 600 A.2d 956 (1991). In determining whether the area in question is a logical area for growth, courts have considered the community's proximity to a large metropolis and projected population growth figures. *Surrick.* Moreover, in order to determine the present level of development, courts consider population density data, the percentage of undeveloped land, and the percentage of land available for development. *Id.*

Appellants did not meet their burden of proving that the Township does not provide its fair share of student housing pursuant to *Surrick.* The only data Appellants produced were the raw figures of how many residential units are in the Township, the number of student homes, and the total population. Appellants presented no evidence that current student housing is inadequate, or any projected population growth figures to demonstrate future need for more student homes. The effect of the Ordinance does not exclude students from residing in the Township because of the approximately 120 existing student homes and as the zoning officer testified, there are additional areas in the Township where student homes could be located. Furthermore, students are also permitted to live in single-family houses, townhouses, boarding houses, apartments, fraternities or sororities.

Based upon the foregoing discussion, the order of the trial court is affirmed.

This decision was reached before the conclusion of Judge PALLADINO's service.

## ORDER

AND NOW, this 6th day of January, 1994, the order of the Court of Common Pleas of Montgomery County is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

This appeal involves a challenge to a zoning ordinance enacted by Lower Merion Township which permits "student homes" to be located in residential areas only if allowed by special exception. The majority rejects the appellants' equal protection argument, concluding that the ordinance is rationally related to the legitimate purpose of preserving the residential character of the community and that the classification of student homes is not arbitrary or unreasonable.

In its brief, the zoning hearing board cites a U.S. Supreme Court case, *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), in which the court held that a municipality may regulate the number of unrelated people living together in a household. I believe that case is clearly distinguishable from this case where the restriction of how persons may live together is based solely on the fact that they are students. When a municipality restricts the number of unrelated persons who may live together, there is a rational basis for the regulation because it is clear that unrelated persons will require more parking, etc., and that the residential character of a neighborhood will be changed by their presence.

In the present case, the restricted class is defined solely on the basis of the fact that they are students. This is the equivalent of defining a group based on what they do for a living. If an ordinance restricted where plumbers could live,

or coal miners or all blue collar workers, we would hold that classification as arbitrary and a violation of equal protection. But because the classification is "student" we accept the zoning hearing board's discriminatory stereotype of students as rowdy, noisy, undesirable neighbors. The ordinance clearly works a violation of equal protection when three or more college age students who work full-time can live together without restriction while two or more students cannot.

Accordingly, I would reverse the trial court and hold that the ordinance violates equal protection. I would also overrule this court's *Lantos* decision, cited by the majority, which upheld the constitutionality of an ordinance similar to the one at issue here.

McGINLEY, J., joins in this dissent.