Oswald Herbert and Mary Herbert :
 :
   v. :
 :
 :
West Reading Borough Zoning :
Hearing Board and Borough of :
West Reading :
 : No. 1113 C.D. 2020
Appeal of:  Borough of West Reading : Argued:  September 20, 2021

BEFORE: HONORABLE P. KEVIN BROBSON, President Judge
   HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
   HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON  FILED:  October 14, 2021

  The Borough of West Reading (Borough) appeals from an order of the Court of Common Pleas of Berks County (trial court) reversing a decision and order of the Zoning Hearing Board of the Borough of West Reading (Board).  The Board's decision and order denied the appeal of Oswald Herbert and Mary Herbert (the Herberts) from an Enforcement Notice (Notice) advising the Herberts that a trailer parked on the grassed backyard of their property in the Borough violated a provision

of the Borough's Zoning Ordinance (Zoning Ordinance)[1] prohibiting the parking of vehicles on grass or bare soil.  Upon review, we reverse.

## I. Factual & Procedural Background

Systems Design Engineering (SDE) provides the Borough with code and zoning enforcement, property maintenance and inspections, and engineering services on a contract basis.  Reproduced Record (R.R.) at 27a.  Keith Yeager (Yeager), through his employment with SDE, serves as a state-certified and sworn code enforcement officer for the Borough.  *Id.* at 27a-28a, 32a & 39a.  Yeager's official credentials do not identify him as a zoning officer, but he understands his job duties to include zoning enforcement as part of enforcing the Borough Code as a whole.  *Id.* at 40a & 55a.

Section 455-138 of the Zoning Ordinance explains that Article XXI, which includes Sections 455-138 to 455-143, regulates "accessory off street parking spaces . . . ."[2]  Section 455-33 of the Zoning Ordinance defines an "accessory use" as one "which is an accessory to the main use of a building or property, such as a retail sales area in a restaurant."

Section 455-139(D) of the Zoning Ordinance, which is applicable to the property at issue, states: "No vehicle parking on grass or bare soil shall be

---

[1] The Zoning Ordinance is Chapter 455 of the Borough's Code and was adopted by the Borough Council on December 18, 2012, by Ordinance No. 1017.  *Available at* https://ecode360.com/30039266 (last visited on October 13, 2021).

[2] We note that neither party has raised the issue of whether the subject ordinance is one that would permit preexisting nonconformity.  *Cf. Mitchell v. Zoning Hearing Bd. for Franklin Park* (Pa. Cmwlth., No. 949 C.D. 2012, filed Dec. 20, 2012), 2012 Pa. Commw. Unpub. LEXIS 970 (unreported) (analyzing whether parking of tow truck on property in residential zone was a preexisting nonconforming use).  We cite *Mitchell* as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

2

permitted." Zoning Ordinance § 455-139(D). Yeager explained that this kind of provision is common because having vehicles parked on grass can attract rodents, track soil from grassed areas into the roadways, create problems with gas and oil leaking into lawn areas, and present a safety hazard as an attractive nuisance to children. R.R. at 33a-34a.

Prior to November 20, 2018, the Zoning Ordinance did not contain a definition of "vehicle," but did contain a definition of "motor vehicle": "A self-propelled device used to transport persons and/or goods over land surfaces." R.R. at 210a (previous version of Zoning Ordinance § 455-33 ("Definitions")). The November 20, 2018, amendment to the Zoning Ordinance removed the definition of "motor vehicle" and replaced it with a definition of "vehicle": "Any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport. A conveyance moving on wheels, runners, tracks or the like, as a cart, sled, automobile, motorcycle or tractor." *Id*. at 128a (current version of Zoning Ordinance § 455-33 ("Definitions")). Yeager testified that he understood the new definition to be merely a clarification of the relevant Zoning Ordinance provisions. *Id*. at 48a-49a.

On November 28, 2018, Yeager served the Notice on the Herberts after inspecting their property numerous times beginning in August 2018. R.R. at 30a & 37a. Yeager saw a backhoe and trailer parked on the Herberts' grassed backyard, which he believed violated Section 455-139(D) of the Zoning Ordinance. *Id*. at 28a, 30a & 37a. Although the Notice itself did not specify the backhoe and trailer, Yeager spoke with Mr. Herbert at some point during the relevant time and did not believe there was any confusion on Mr. Herbert's part about the nature of the violation. *Id*. at 41a.

The Notice gave the Herberts until December 6, 2018, to remove the backhoe and trailer from the grassed area, listed a penalty of up to $500 per day for noncompliance, and informed the Herberts they had 20 days to appeal before the violation would proceed to civil enforcement proceedings before a magisterial district judge. R.R. at 3a. When Yeager returned after December 6, 2018, the backhoe had been moved to a paved driveway, but the trailer was still on the grass, now propped up on blocks as its wheels had been removed.[3] *Id*. at 31a & 36a-37a.

The Herberts timely appealed to the Board, asserting that the Notice did not sufficiently specify the purported violation, that the definition of "vehicle" in the Zoning Ordinance was overly broad and vague, and that the presence of the trailer on their backyard grass was a preexisting legal use of their property. R.R. at 8a. The Board conducted a public hearing. Yeager testified that the trailer in the Herberts' backyard was not motorized, but he believed it was a "vehicle" under the Zoning Ordinance's definition of that term when he issued the Notice on November 28, 2018. R.R. at 42a-44a. He further averred that "a trailer is a vehicle" and remains a vehicle even if its wheels are removed, as Mr. Herbert did after receiving the Notice. *Id*. at 44a & 51a.

Mr. Herbert testified that the trailer, which had a title and registration (currently expired), had been on and off his property over the past ten years and continuously on his backyard grass since August 2018; the wheels were off the trailer because he was lengthening it. R.R. at 72a & 77a-79a. He used a pickup truck to move the trailer on and off his backyard grass. *Id*. at 77a. When the trailer was not on his property, he used it to transport lawnmowers as part of a family

---

[3] Since Mr. Herbert had moved the backhoe off of the grassed area of his backyard before the Notice's deadline for compliance, it was no longer in dispute when the Board issued its decision and is not at issue in this appeal.

business. *Id*. at 76a & 82a. He claimed a previous zoning officer told him verbally that having the trailer on the backyard grass did not violate the Zoning Ordinance as it was then written. *Id*. at 73a & 83a. Mr. Herbert stated that when he received the Notice, he understood it referred to the trailer on his backyard grass. *Id*. at 75a. He did not think the Notice pertained to the backhoe. *Id*.

A member of the Borough Council testified that Steve Moyer of SDE is the sworn zoning officer for the Borough and that Yeager is the sworn-in assistant code enforcement officer. *Id*. at 59a-60a. The Zoning Ordinance is a distinct section of the Borough's Code; code and zoning enforcement are both contracted by the Borough to SDE. *Id*. at 61a, 63a-64a & 67a.

On February 28, 2019, the Board issued a decision and order denying the Herberts' appeal of the Notice. R.R. at 148a-55a. The Board found that Yeager validly issued the Notice in his capacity as an authorized employee of SDE, which had been contracted by the Borough to provide its zoning and code enforcement services. *Id*. at 152a & 154a-55a. The Board also found the Notice facially valid in that it provided the address of the violation, the Zoning Ordinance provision that had been violated, the date for compliance, the penalties for noncompliance, and the date and procedures for appeal. *Id*. at 152a & 155a.

Regarding the substance of the Notice, the Board acknowledged that a "vehicle" was not specifically defined in the Zoning Ordinance until the November 20, 2018, amendment enacted just before the Notice was issued. Board Decision; R.R. at 152a-54a. Nonetheless, after reviewing the Zoning Ordinance's language and usage, dictionary definitions, the Vehicle Code, 75 Pa.C.S. §§ 101-9701, and applicable case law concerning the common or standard usage of the term "vehicle," the Board found the trailer was a "vehicle" subject to Section 455-139(D) both

5

before and after the inclusion of the new definition and whether its wheels were attached or not.[4] *Id.* Thus, the Board concluded the trailer was never legitimately on the Herberts' backyard grass and its presence was not a permissible preexisting nonconforming use of their property. *Id.*

The Herberts appealed to the trial court, asserting that the presence of the trailer on their backyard grass constituted a preexisting nonconforming use under the Zoning Ordinance in effect prior to the November 20, 2018, amendment that added the definition of a "vehicle."[5] R.R. at 159a. The Herberts further asserted that the new definition was overly broad, vague, and ambiguous. *Id.* The Herberts also argued that the Notice lacked specificity because it did not state expressly that the trailer was the source of the asserted violation and was invalid because it was not issued by the Borough's designated zoning officer.[6] *Id.*

The trial court took no new evidence but heard arguments from counsel for both sides. On October 9, 2020, the trial court issued an order reversing the Board. R.R. at 174a. In its ensuing opinion, the trial court rejected the Borough's assertion that even before the November 20, 2018, inclusion in the Zoning Ordinance of a specific definition of "vehicle," the Herberts' trailer qualified as a vehicle pursuant to common usage and was therefore subject to Section 455-139(D). Trial

---

[4] Although not argued by the parties, we note that by extension of the Borough's previous definition of a "motor vehicle" as "[a] self-propelled device used to transport persons and/or goods over land surfaces," R.R. at 210a, one could infer that before the amendment, a "vehicle" (unqualified by motorization) was "a device used to transport persons and/or goods over land surfaces," which would clearly include the Herberts' trailer.

[5] At the trial court level, the Borough intervened in the litigation and on April 27, 2021, this Court granted the Board's application to join the Borough's brief in this matter.

[6] The Herberts' challenge to Yeager's authority to issue the Notice was not formally raised in their appeal to the Board, but evidence and testimony on the question was taken at the hearing and the Board expressly found that Yeager was authorized to issue the Notice. R.R. at 27a-28a, 40a, 57a-69a & 152a. The issue was therefore not waived.

Ct. Op., 1/27/21, at 2; R.R. at 177a. The trial court noted that prior to the amendment adding the definition of "vehicle," the Zoning Ordinance had a definition of "motor vehicle" that the trailer, lacking a motor, did not satisfy. *Id*. at 178a. Therefore, according to the trial court, the trailer present on the Herberts' backyard grass could not have previously been in violation of Section 455-139(D). *Id*. The trial court thus found the facts presented a lawful preexisting nonconforming use of the Herberts' property that could not be prosecuted under the current version of the Zoning Ordinance.[7] *Id*. at 178a-79a. The Borough appealed to this Court.

## II. Discussion
## A. Preexisting Nonconforming Use

A preexisting nonconforming use "arises when a lawful existing use is subsequently barred by a change in the zoning ordinance."[8] *Hager v. W. Rockhill Twp. Zoning Hearing Bd.*, 795 A.2d 1104, 1110 (Pa. Cmwlth. 2002) (quoting *Scalise v. Zoning Hearing Bd. of Borough of W. Mifflin*, 756 A.2d 163 (Pa. Cmwlth. 2000)). However, the right to maintain a preexisting nonconforming use is available "only for uses that were lawful when they came into existence" prior to when the

---

[7] The trial court did not address Yeager's authority to issue the Notice, whether the Notice was invalid because it did not specify that it applied to the trailer and backhoe on the Herberts' property, or whether the new definition of "vehicle" is impermissibly broad. However, both sides have briefed these issues, which were preserved at the trial court level. Borough's Reply Br. at 10-16; Herberts' Br. at 13-23.

[8] In the context of a zoning matter, where the trial court does not accept additional evidence, this Court determines on review whether the zoning board committed an error of law or a manifest abuse of discretion. *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775, 783 n.6 (Pa. Cmwlth. 2019) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983)). A zoning board abuses its discretion if its findings are not supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

7

prohibitory ordinance took effect. *Id*.[9] Preexisting illegal uses "cannot become nonconforming uses with a protected right to exist upon enactment of a new ordinance prohibiting them." *Id*. The party proposing the existence of a preexisting nonconforming use bears the burden to show the use was legal before the enactment of the ordinance at issue. *Id*. The legality of a use is a question of law over which our review is plenary. *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775, 787 (Pa. Cmwlth. 2019).

There is no dispute that the Herberts' parking of the trailer on their backyard grass beginning in August 2018 predated the November 20, 2018, addition of the definition of "vehicle" to the Zoning Ordinance and was ongoing as of November 28, 2018, when Yeager issued the Notice. There is also no dispute that before November 20, 2018, the Zoning Ordinance did not specifically define "vehicle," but did contain a definition for "motor vehicle": "A self-propelled device used to transport persons and/or goods over land surfaces." R.R. at 210a (previous version of Zoning Ordinance § 455-33 ("Definitions")). The Herberts' trailer, lacking a motor, did not fit within that definition.

The Borough argues, however, that the Herberts failed to show the presence of the trailer on their backyard grass since August 2018 was a lawful preexisting use before the new definition took effect. Borough's Br. at 21-22. Although the Zoning Ordinance at the time provided only a definition of a "motorized vehicle," the Borough asserts that the common understanding of "vehicle" as used in Section 455-139(D) did not require that the trailer be motorized to violate the provision. Borough's Reply Br. at 3 & 10. The Borough further

---

[9] The preexisting nonconforming use doctrine is premised on the concern that retroactive enforcement of zoning to extinguish a use that was legal at the time it came into existence may amount to a taking without compensation. *Baer v. Zoning Hearing Bd. of Quincy Twp.*, 782 A.2d 597, 601 (Pa. Cmwlth. 2001).

8

maintains that even in the absence of a specific definition of "vehicle" in the Zoning Ordinance before November 20, 2018, the common usage and understanding of the term clearly included the trailer, which at the time of the Notice was still on wheels, because dictionary definitions characterize a "vehicle" as a means of carrying or transporting something. Borough's Br. at 26-27.

We reject the Herberts' arguments that parking the trailer on the grass in the backyard constitutes a legitimate preexisting use. The Borough is correct that when a specific term is undefined, here, "vehicle," which is used in Section 455-139(D) without mention of any qualification of being motorized, courts may look to the term's common usage and understanding. Courts may consider definitions in dictionaries and other statutes or regulations, and the overall phrasing and context of the provision containing the term in order to interpret the legislative intent for use of that term. *See, e.g.*, *City of Clairton v. Zoning Hearing Bd. of the City of Clairton*, 246 A.3d 890, 903 (Pa. Cmwlth. 2021).

Black's Law Dictionary defines a "vehicle" as "1. An instrument of transportation or conveyance. 2. Any conveyance used in transporting passengers or things by land, water, or air." *Vehicle*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines "vehicle" as "a means of carrying or transporting something." Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/vehicle (last visited October 13, 2021). The American Heritage Dictionary defines "vehicle" as a "device or structure for transporting persons or things; a conveyance." Am. Heritage Dictionary, *available at* https://www.ahdictionary.com/word/search.html?q=vehicle (last visited October 13, 2021). These definitions consistently characterize a "vehicle" as something that transports something else.

9

Although the definition of "trailer" is not at issue, the Zoning Ordinance defines a "travel trailer" as "[a] *vehicular* portable structure built on a chassis, designed as a temporary dwelling for travel, recreation, vacation and other short-term uses." Zoning Ordinance § 455-33 ("Definitions) (emphasis added). Merriam-Webster and American Heritage define "trailer" as, respectively, "a *vehicle* for transporting something" and "[a] nonmotorized *vehicle* designed to be pulled behind a motor vehicle . . . ." Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/trailer (last visited October 13, 2021) (emphasis added); Am. Heritage Dictionary, *available at* https://www.ahdictionary.com/word/search.html?q=trailer (last visited October 13, 2021) (emphasis added).

Just as the definitions of "vehicle" consistently emphasize the quality of being able to transport something, the definitions of "trailer" are equally consistent in emphasizing that a trailer is a vehicle. It is therefore difficult to avoid the conclusion that Section 455-139(D), which states that "[n]o vehicle parking on grass or bare soil shall be permitted," included the Herberts' trailer even before the addition of a definition of "vehicle" as of November 20, 2018. The presence in the prior version of the Zoning Ordinance of a definition of "motor vehicle" does not mean that Section 455-139(D), which does not specify that only motorized vehicles are barred from parking on grass or soil, did not apply to trailers prior to the addition of the new definition of "vehicle."

Thus, as of August 2018 when the trailer appeared on the Herberts' backyard grass, the Borough was correct in finding the Herberts were in violation of Section 455-139(D). The Herberts' use of their property for this purpose was never lawful, and therefore could not be protected as a lawful preexisting nonconforming

10

use. The trial court therefore erred in reversing the Board's determination that the Herberts had not established a valid preexisting nonconforming use sufficient to overcome their violation of Section 455-139(D) prior to the November 20, 2018, addition to the Zoning Ordinance of a definition of "vehicle."[10]

## B. Overbreadth Challenge to New Definition

The Herberts acknowledge that the new definition of "vehicle" encompasses their trailer, but assert that it goes too far and could be interpreted to cover a "virtually limitless" catalog of things, including skateboards, snow sleds, baby strollers, toy wagons, wheelbarrows, roller skates, skis, riding lawn mowers, bicycles, and wheelchairs.[11] Herberts' Br. at 23-25. The breadth of the new definition's potential applicability, according to the Herberts, fails to put the public on notice of what would violate Section 455-139(D) of the Zoning Ordinance. *Id.* at 26. The Herberts point to Yeager's testimony that while wheelbarrows and

---

[10] The Herberts assert that a lawful preexisting nonconforming use creates a vested property right for the owner that cannot be negated unless the use is a nuisance, abandoned, or extinguished by eminent domain. Herberts' Br. at 9-10 (citing *Money v. Zoning Hearing Bd. of Haverford Twp.*, 755 A.2d 732, 736 (Pa. Cmwlth. 2000)). However, because the Board correctly found that the Herberts' use of their grassed backyard area to park their trailer never constituted a lawful use pursuant to Section 455-139(D), no such vested rights arose.

We also reject the Herberts' assertion that once Mr. Herbert removed the wheels from the trailer after receiving the Notice, the trailer was no longer capable of transporting anything and therefore was no longer a "vehicle" subject to Section 455-139(D). Herberts' Br. at 12-13. The Herberts offer no evidentiary or legal support for this position, and analogous arguments in other contexts have been rejected. *See, e.g.*, *Commonwealth v. Zortman*, 23 A.3d 519, 526 (Pa. 2011) (firearm lacking firing pin, which was therefore inoperable, did not lose its character and function as a firearm for purposes of mandatory minimum sentencing for drug offenses committed with a firearm).

[11] This issue was raised by the Herberts in their appeal from the Board to the trial court. R.R. at 159a. The trial court's opinion did not address the issue, but both sides have presented arguments on it in their briefs and we address it here as an alternative ground for reversal of the trial court's determination.

11

wheelchairs could fit within the definition, he would be selective in his application of the provision. *Id*. at 27. To the Herberts, this presents the impermissible danger of discretionary or even discriminatory enforcement not tied to the language of the Zoning Ordinance, and therefore, a potential due process violation. *Id*. at 28-30.

The Borough responds that Section 455-139(D), although a regulation of general application throughout the Borough, pertains particularly to residential uses where a prohibition of vehicles parking on grassed areas is a sensible and clear goal and priority. Borough's Br. at 23. The Borough adds that terms are to be construed with regard to their common usage and within the context of the provision where they appear. *Id*. at 24-26. Also, legislative enactments warrant the presumption of validity and the interpretation of the legislative entity warrants deference. *Id*. Thus, the Borough maintains Section 455-139(D)'s prohibition of vehicle "parking" on grassed residential areas cannot be reasonably read as pertaining to the Herberts' examples of skateboards, wheelbarrows, and sleds, which are not commonly thought of as being "parked" when they are not in use. *Id*. at 28. The Borough posits that reasonable people would not have to guess that Section 455-139(D)'s prohibition on parking vehicles on grassed residential areas pertains to cars, trucks, and the Herberts' trailer, and not the hypothetical examples listed by the Herberts. *Id*. Moreover, the Borough points to Mr. Herbert's admission that he personally knew the Notice citing Section 455-139(D) pertained to his trailer, so there was no confusion or guessing here that would support the Herberts' assertions of vagueness. *Id*. at 29.

When the constitutionality of a zoning ordinance is challenged, there is a presumption that the ordinance is valid. *Commonwealth v. Marcus*, 690 A.2d 842, 846 (Pa. Cmwlth. 1997). The party challenging the validity of the ordinance has a

heavy burden of proving that the ordinance is unconstitutional. *Id.* An ordinance is unconstitutionally vague when persons of common intelligence must guess its meaning. *Id.* An assertion of hypothetical difficulty in establishing whether a situation or example falls within statutory language does not render the language unconstitutional unless the language "fails to convey sufficiently definite warning as to proscribed conduct when measured against common understanding and practices." *Farley v. Zoning Hearing Bd. of Lower Merion Twp.*, 636 A.2d 1232, 1239 (Pa. Cmwlth. 1994). Moreover, if a landowner challenging a zoning ordinance cannot establish that guesswork was actually required in his or her own case, then a vagueness challenge will fail. *Id.*; *see also Marcus*, 690 A.2d at 846.

Here, Mr. Herbert acknowledged that when he received the Notice, he "thought it referenced the trailer" in his backyard. R.R. at 75a. He did not testify that he thought anything else that might have also been in his backyard, like a wheelbarrow for the work he was doing on his property, might be the cause of the purported violation. In fact, he stated that he had *not* thought the backhoe was the source of the violation. *Id.* The Herberts have thus failed to establish that any guesswork was required to determine that the trailer in their backyard was, in fact, the subject of the Notice's citation to and quotation of Section 455-139(D)'s prohibition of parking vehicles on grassed areas. *Marcus*, 690 A.2d at 846; *Farley*, 636 A.2d at 1239. We therefore find the Herberts have failed to show that the definition of "vehicle" that has been part of the Zoning Ordinance since November 20, 2018, is unconstitutionally vague or overbroad.

13

### C. Yeager's Authority to Issue Notice

The Herberts argue that the Zoning Ordinance may be enforced only by the Borough's designated zoning officer, which at the relevant time was Steven Moyer, an employee of SDE.[12] Herberts' Br. at 13-20. The Herberts aver that because Yeager was a code enforcement officer and not the zoning officer, he was not empowered under the Borough Code to enforce zoning provisions. *Id.* The Borough responds that the Borough contracted with SDE to provide both zoning and code enforcement and that nothing in the Borough's Code precluded Yeager from issuing the Notice when he observed a clear violation of the Code, which includes the Zoning Ordinance. Borough's Reply Br. at 11-12.

The Zoning Ordinance, which is Chapter 455 of the Borough's Code, specifies that violations of its provisions are to be enforced by the Borough's appointed zoning officer, which at the relevant time was Steven Moyer. Zoning Ordinance § 455-11. The code enforcement officer position is addressed in a different portion of the Code, Chapter 188 ("Construction Standards"). Chapter 188 empowers the code enforcement officer to "enforce and administer all of the provisions of this article and of those other applicable codes and ordinances that establish the office of Code Enforcement as their official administration and enforcement authority." Borough Code § 188-4(A). Outside of the Borough's building and construction standards in Chapter 188, the "other applicable codes and ordinances" that lie expressly within the code enforcement officer's full or partial authority are varied, including graffiti, blight, and noise abatement, floodplain management, and some aspects of licensing and permitting for rental, food service,

---

[12] As with the overbreadth issue, this issue was raised by the Herberts in their appeal from the Board to the trial court. R.R. at 159a. The trial court's opinion did not address the issue, but both sides have presented arguments on it in their briefs and we address it here as an alternative ground for reversal of the trial court's determination.

garbage disposal, and commercial activity in the Borough.  *See, e.g.*, Borough Code §§ 163-14, 235-6, 249-2, 284-8, 355-3, 368-4 & 385-33.  This list does not include the Zoning Ordinance, giving some credence to the Herberts' position.

However, the Borough Code also gives the code enforcement officer broader authority, comparable to police power, to act on the Borough's behalf when necessary:

> Duties.  The duties of the Code Enforcement Officer shall include . . . the issuance of all necessary notices and orders to abate illegal or unsafe conditions to ensure compliance with *this article and those other applicable codes and/or ordinances for the safety, health and general welfare of the public*; the making of inspections to determine compliance with the applicable codes and ordinances; the undertaking of investigations, and other activities as may be required.

Borough Code § 184(B) (emphasis added).

The Herberts have not argued that the Zoning Ordinance does not pertain to the safety, health, and (particularly) general welfare of the public.  Moreover, Yeager testified that the Borough had received "numerous complaints" about the trailer in the Herberts' yard and that his experience and observations led him to believe that the trailer posed a safety hazard, both to the local environment and to children, both before and after its wheels were removed and it was placed on blocks.  R.R. at 33a-36a & 54a.  Although Mr. Herbert testified that he personally was not aware of any complaints about the trailer, Yeager's testimony was essentially unrefuted. *Id*. at 85a.  We therefore conclude that Yeager was within his

15

authority as a code enforcement officer for the Borough when he issued the Notice, and the Board did not err in so finding.[13]

## D. Specificity of Notice

Finally, the Herberts argue that the Notice is materially and fatally defective pursuant to the requirements for an enforcement notice set forth in Section 616.1(c) of the Pennsylvania Municipalities Planning Code (MPC),[14] 53 P.S. § 10616.1(c), which is incorporated verbatim into the Zoning Ordinance as Section 455-11(C).[15] Herberts' Br. at 21-23. The Herberts maintain that the lack of specific reference to the trailer provided no guidance as to the basis of the Notice or how to remedy the asserted problem. *Id.* The Borough responds that the Notice was valid on its face in all respects and that Mr. Herbert's actions and testimony show that he understood the Notice's import that the trailer on his backyard grass violated the Zoning Ordinance. Borough's Reply Br. at 13-16.

Section 616.1(c) of the MPC and Section 455-11(C) of the Zoning Ordinance provide in pertinent part that an enforcement notice shall state "at least the following":

---

[13] It is immaterial that the Board decided the issue on the basis that SDE, rather than Moyer individually, was the zoning officer, and Yeager was its authorized employee. Board Decision; R.R. at 152a & 154a. Because this appeal involves the circumstance where the trial court took no new evidence, this Court determines on review whether the zoning board committed an error of law or a manifest abuse of discretion. *Sowich*, 214 A.3d at 783 n.6. We simply find here that the Board did not err in its determination that Yeager was authorized to issue the Notice.

[14] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1(c).

[15] This issue was raised by the Herberts in their appeal from the Board to the trial court. R.R. at 159a. The trial court's opinion did not address the issue, but both sides have presented arguments on it in their briefs and we address it here as an alternative ground for reversal of the trial court's determination.

(1) The name of the owner of record and any other person against whom the municipality intends to take action.

(2) The location of the property in violation.

(3) The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance.

(4) The date before which the steps for compliance must be commenced and the date before which the steps must be completed.

(5) That the recipient of the notice has the right to appeal to the zoning hearing board within a prescribed period of time in accordance with procedures set forth in the ordinance.

(6) That failure to comply with the notice within the time specified, unless extended by appeal to the zoning hearing board, constitutes a violation, with possible sanctions clearly described.

53 P.S. § 10616.1(c); Zoning Ordinance § 455-11(C). In *Township of Lower Milford v. Britt*, 799 A.2d 965 (Pa. Cmwlth. 2002), this Court held that a zoning enforcement notice may use general language to describe the conduct leading to a violation, particularly if the notice replicates the language of the zoning provision at issue. *Id.* at 970-71. The recipient's actions upon receiving the notice may also be considered an indicator that its contents are sufficiently specific. *Id.* at 971.

Here, the Notice includes the Herberts' name as owners of the property at the given address where the violation occurred. R.R. at 3a. It cites Section 455-139(D) and states that the violation is "Parking Vehicle(s) in Rear Yard on Grass" and the remedy is to "[d]iscontinue parking vehicle(s) on the grass area in the yard."

*Id.* The date for compliance is December 6, 2018, instructions for appeal are provided, and the penalty is set forth clearly. *Id.*

As in *Lower Milford*, the language of the ordinance is provided in the Notice. In that case, the landowner had to deduce from "industrial activity" that her activity of "trash hauling" was the issue. 799 A.2d at 970-71. Here, by contrast, the import of the Notice that the trailer (and backhoe) on Mr. Herbert's backyard were at issue was not difficult for him to surmise. In fact, Mr. Herbert readily testified that when he received the Notice, he "thought it referenced the trailer." R.R. at 75a. This is particularly so in light of there being no evidence of anything else that could be characterized as a "vehicle" having been "parked" in Mr. Herbert's backyard at the relevant time; he understood the Notice well enough to state that he had *not* thought the backhoe, which although motorized does not carry or transport anything, was part of the violation. *Id.* Thus, the Herberts have not established that the Notice was defective in any material, much less fatal, way. We therefore find the Board did not err in concluding the Notice met all necessary legal standards imposed by the MPC and the Zoning Ordinance.

### III. Conclusion

For the foregoing reasons, the trial court's order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oswald Herbert and Mary Herbert    :
    :
          v.             :
    :
    :
West Reading Borough Zoning    :
Hearing Board and Borough of    :
West Reading    :
    :   No. 1113 C.D. 2020
Appeal of:  Borough of West Reading  :

## O R D E R

AND NOW, this 14th day of October, 2021, the October 9, 2020, order of the Court of Common Pleas of Berks County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge