## Atlantic Richfield Company v. City of Erie Zoning Board of Adjustment

*Norman Stark*, for plaintiff.

*Joseph M. Walsh, Jr.*, for defendant.

CARNEY, P. J., June 19, 1967.—Petitioner, William J. Pope, has appealed to this court from the decision of the Zoning Board of Adjustment of the City of Erie. Said decision was a refusal to grant a variance to Sibarco Stations, Inc., to construct a gasoline service station, on property located at 954 East Sixth Street, Erie, Pa. The property is zoned "Business", but is located within 200 feet of Wayne School on the southwest corner of East Sixth Street and East Avenue, and Wayne Park, which is on the east side of East Avenue at its intersection with East Sixth Street.

The refusal was based upon the city's zoning ordinance no. 7933, article III, §3500-305, which provides as follows:

"In a business or industrial district a station for the storage and sale of fuel, lubricating oil and accessories for motor vehicles may be established, erected or enlarged provided:

"(a) No street entrance or exit of such service station for vehicles shall be within two hundred (200) feet of a street entrance or exit of any school, park or playground, conducted for and attended by children".

On September 1, 1966, Atlantic Richfield Company filed application no. 2455 with the zoning adminis-

trator for a permit to erect a one-story building at 954 East Sixth Street, said building to be used as a gasoline service station. It was later learned that the designation of plaintiff, Atlantic Richfield Company, was in error, and the title to these proceedings was amended to substitute the proper party, Sibarco Stations, Inc. Petitioner, William J. Pope, is a part owner of the property in question.

On September 13, 1966, a hearing was held before the zoning board of adjustment, and on September 16, 1966, the permit was refused for the reason that "the appellant's property can be used for the purpose for which it is zoned".

The matter was then appealed to this court, and on January 5, 1967, the request for a variance was returned to the zoning board of adjustment for further hearing. These hearings were held on February 14th and 16th, and on February 17, 1967, the board again denied the request for a variance; hence, the appeal.

At the hearings, the city produced testimony that there was an average summer attendance at the Wayne playground of 5,715 children, an average daily attendance of 99 boys and 56 girls. Mr. Robert Behan, principal at Wayne School, testified that a room-to-room check indicated that there are 252 pupils in Wayne School who cross that corner traveling in a north-south direction, and that they would use this intersection four times a day.

The intersection is regulated by a traffic light, and during the time when the children are going to and from school there is an attendant on duty. It is recognized by the court that this is an extremely busy intersection, and is a correspondingly dangerous one. East Sixth Street is one of the main thoroughfares leading into the city; East Avenue one of the city's most highly traveled north-south arteries.

The court was not requested to hear any testimony and, therefore, must where necessary, base its decision on the evidence produced before the board. Where, on an appeal from a board of adjustment, no additional testimony is taken by the court of common pleas, the only question before said court is whether the board of adjustment abused its discretion or committed an error of law.

In Humble Oil and Refining Co. v. Radnor Township Board of Adjustment, 29 D. & C. 2d 17 (1962), in a similar situation, appellant attacked the validity of the ordinance, and the court held that it was proper to do so in that proceeding. Therefore, even though no testimony was presented to this court by either appellant or the city, it is not only our privilege but our duty to pass upon the validity of that portion of the ordinance that is here being contested.

In doing so, we must recognize that zoning regulations are restrictions on a property owner's right to use his own property, and that they may be imposed on property only where the welfare of the community at large so demands. All property is held in subordination to the right of its reasonable regulation by the governing body, where it is clearly necessary to preserve the health, safety or morals of the people.

In Lord Appeal, 368 Pa. 121, the court quoted White's Appeal, 287 Pa. 259 as follows:

". . . all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals (or general welfare) of the people . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare . . . While such regulations may not

physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation".

The court also quoted Spann v. Dallas, 111 Texas 350, 235 S.W. 513, that:

"The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is part of the citizen's natural liberty—an expression of his freedom—guaranteed as inviolate by every American Bill of Rights".

It must be clear that such zoning restrictions have a substantial relation to the public good. If such relation is not clear, the ordinance must be held to be an unlawful interference with the property rights of the landowners.

With this background, let us examine the pertinent ordinance. Appellant contends that the board's decision should be reversed: First, because it does not bear a substantial relationship to the public health, safety, morals or general welfare of the community, and is, therefore, an arbitrary, unnecessary and improper exercise of the police power. In support of this contention, petitioner cites Atlantic Richfield Company v. Zoning Board of Adjustment of the City of Bethlehem, Pennsylvania, at May term, 1966, no. 331, in the Court of Common Pleas of Northampton County, decided January 16, 1967, and Parvin v. Leesport Borough, 36 D. & C. 2d 608 (1965), both of which held that similar restrictions did not bear such a relationship.

And, secondly, other businesses having a similar or higher traffic pattern across sidewalks are not prohibited, and, therefore, the portion of the ordinance before the court discriminates against gasoline service stations and is, therefore, unconstitutional.

We feel that we need not decide the first question, because we hesitate to substitute our judgment for the legislative body that enacted the ordinance, particularly where we have not heard any evidence whatsoever, and secondly, because, in our opinion, petitioner's second objection is so well taken.

It is our opinion from the ordinance itself, and from the evidence before the court, that this ordinance is directed primarily, if not exclusively, at an alleged traffic hazard. A careful examination of its terms indicates that as long as the street entrances or exits of the service station, and these would presumably be its driveways, were 200 feet from the school, the ordinance would not be violated. In other words, as long as the driveways were so situated, the proximity of the stored gasoline and oil products, or the location of its pumps, was of little import. The framers of this ordinance placed their emphasis on the location of the driveways, and thereby indicated their purpose.

Even were we to assume otherwise, the law in the Commonwealth is well settled that the storage of gasoline in properly constructed and equipped tanks is not dangerous to life and property: Manorville Borough v. Flenner, 286 Pa. 103. In Erie v. Gulf Oil Corporation, 395 Pa. 383 (1959), which involved the construction of a tank with a capacity of 1,800,000 gallons in the city of Erie, the court said:

". . . We have decided that gasoline in storage in built up sections is not only not a nuisance per se, but it is not dangerous as a fire hazard".

Thus, even if we were to consider one of the purposes of the ordinance to be protection from a fire or explosion hazard, we must conclude that such hazard does not exist, and, in that respect, the ordinance would not be a proper function of the police power of the city.

Having decided that the ordinance is directed to an alleged traffic hazard caused by the vehicular traffic crossing sidewalks in entering and leaving a gasoline station in the vicinity of a school, we must also reach the conclusion that it is discriminatory and thus unconstitutional.

It is well established that ordinances must be uniform, fair and impartial in their operation. There can be no discrimination against those of the same class, and if they are intended as regulations, they must apply to all of a class. An ordinance that fails in uniform application is, therefore, unconstitutional.

Appellant contends that the ordinance discriminates against gasoline service stations, in that there is no prohibition against other uses of the property, which by their very nature require at least equal, if not a greater volume of vehicular traffic across a sidewalk. If the owner of the property in question so desired, he could use with impunity the same property for a drive-in restaurant, a parking lot, a car wash, a food market, or any type of shopping center. Particularly in the case of a drive-in or shopping center, the volume of traffic crossing the sidewalk would undoubtedly be greater and under more extreme conditions than those created by the erection of a service station.

In David M. Woolin and Annie Woolin v. City of Miami, No. 65-273, in the United States District Court for the Southern District of Florida, the same situation existed, and the question of constitutionality was raised. It concerned an ordinance which, in certain zones, prohibited the erection of gasoline service stations within 750 feet of each other, or within 350 yards of a church, hospital, school or other such institution where large numbers of pedestrians congregate.

The court found that the distance limitations deprived plaintiffs of equal protection and due process guaranteed to them by the Fourteenth Amendment to

the United States Constitution and, therefore, were invalid as applied to plaintiff's property.

The court said:

"A suggestion is made by the city that the restrictions promote traffic safety. However, the evidence reflects that greater volumes of vehicular and pedestrian traffic are served by other commercial enterprises in plaintiffs' neighborhood, such as large chain stores like Sears, Roebuck and Co., Stevens Market, Kwik Chek Markets, and by shopping centers, restaurants, and other drive-in type establishments, without such distance restrictions. The fact that cars must cross a curb or a sidewalk to use a filling station no longer has importance in the face of the defendant's ordinances requiring off-street parking in almost every conceivable type of business operation. One only has to visit a shopping center or a large food market to observe the mixing of pedestrian and vehicular traffic under more extreme conditions and in greater volume than can conceivably occur in a station on plaintiffs' property. There is no justification for permitting commercial enterprises with equal or greater traffic hazards, without the distance restrictions, while applying distance restrictions for supposed traffic hazard reasons to gasoline stations".

In White's Appeal, 287 Pa. 259, 268, the court, in referring to a building line ordinance, said:

"The application and consequence of this ordinance is a gross discrimination in that it does not bear alike on all persons living within the same territory. Regulations which do not operate on all alike cannot be justified under the police power".

Common sense and justice as well as the Constitution of the United States, require that, so far as may be, the limitations and burdens shall be equal to all those similarly situated: City of Vincennes, Ind. v. Marland Refining Co., 33 F. 2d 427, 430. The court

there held the prohibition against drive-in gasoline stations, within 200 feet of a church or school, to be invalid.

In Humble Oil and Refining Co. v. Radnor Township Board of Adjustment, 29 D. & C. 2d 17 (1962), a zoning ordinance eliminating service stations in a commercial district was held invalid and unconstitutional. The court, at page 22, said:

"There is no evidence on the record establishing why a discrimination should be made between service stations and other businesses, i. e., restaurants and eating places".

Nor is there any evidence on the record before the court why there should be a discrimination between a service station in the instant case and a drive-in restaurant. We have determined that this ordinance prohibits service stations because of the contended traffic hazard, and that this is so, not only because of the wording of the ordinance, but also because gasoline and allied products, properly stored, are no longer considered as creating a hazard. This being so, the sole remaining basis for the ordinance is the alleged traffic problem. Not only does it appear that the volume of traffic would be greater in the case of a drive-in, but a large part of the traffic would occur at noon, at the very same time children in a nearby school would be crossing the street. To allow the construction of a drive-in restaurant and prohibit a service station is unquestionably discriminatory and we must so hold.

The requirement set forth in Bilbar Construction Company v. Easttown Township Board of Adjustment, 393 Pa. 62, 72, that ". . . Someone must be injured by the ordinance's restrictions in order to raise the constitutional question", is fulfilled by the uncontradicted testimony of petitioner at the hearing of September 13, 1966. Mr. Pope testified that the building that now occupies the premises houses 10 apartments

and four stores; that the building is without an elevator or a central heating unit, that the building is 52 years old, and would require an expenditure estimated at between $40,000 and $55,000 to modernize and renovate the structure so that it would attract tenants who would be able to pay sufficient rental to pay the taxes and return a profit on the investment.

He stated that not only have they failed to realize a profit from the rental, but had actually operated the building at a loss.

We conclude, therefore, that section 3500-305 of the City of Erie Zoning Ordinance of 1937, prohibiting the erection of gasoline service stations within 200 feet of the street entrance of a school, park or playground, for the reasons set forth above, is discriminatory.

### ORDER OF COURT

And now, June 19, 1967, for the reasons set forth in this opinion, section 3500-303, article III, ordinance no. 7933 of the city of Erie, Pa., is hereby declared unconstitutional, and the appeal of William J. Pope from the refusal of the zoning board of adjustment to issue a permit for the construction of a gasoline service station at 954 East Sixth Street, Erie, Pa., is sustained.