IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Keefe, CHIBS, Inc., d/b/a   :
Carnivores Sports Bar, TWID 365,   :
LLC, d/b/a The Pub at 333, The J.   :
Keefe Co., LLC d/b/a The Lot of   :
Edgewater, Co 83, LLC, d/b/a   :
Hoffstots Cafe' Monaco, MR 2021,   :
LLC, OOWH, LLC, d/b/a Vinnie's   :
Tavern, Oakmont Saloon, LLC,   :
Mangia Italiano, LLC, and   :
Hoff & Lots Holdings Co., LLC,   :
                 Appellants   :
  :
          v.   :
  :
Borough of Oakmont Zoning Hearing   :   No. 201 C.D. 2024
Board and Borough of Oakmont   :   Argued: October 8, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
               HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE FIZZANO CANNON                   FILED: November 6, 2024

John Keefe, individually and as the principal of his various business entities[1] (collectively, Keefe), appeals from an order of the Court of Common Pleas of Allegheny County (Common Pleas Court) that affirmed the denial by the Borough of Oakmont (Oakmont) Zoning Hearing Board (Board) of Keefe's substantive validity challenge to a zoning ordinance amendment. Upon review, we conclude

---

[1] CHIBS, Inc., d/b/a Carnivores Sports Bar, TWID 365, LLC, d/b/a The Pub at 333, The J. Keefe Co., LLC d/b/a The Lot of Edgewater, Co 83, LLC, d/b/a Hoffstots Cafe' Monaco, MR 2021, LLC, OOWH, LLC, d/b/a Vinnie's Tavern, Oakmont Saloon, LLC, Mangia Italiano, LLC, and Hoff & Lots Holdings Co., LLC.

that the ordinance at issue violates the constitutional equal protection rights of existing businesses in Oakmont, and we reverse the Common Pleas Court's order.

## I. Background

Oakmont is a suburb of Pittsburgh. John Keefe is a longtime resident of Oakmont and the owner of a number of businesses in its Commercial District. Board's Findings of Fact, Conclusions of Law, and Decision, August 7, 2023 (Bd. Dec.) at 1; Reproduced Record (RR) at 97a-99a. In 2011, Oakmont enacted an amendment to its zoning ordinance[2] that, in pertinent part, required businesses in the Commercial District – which included Keefe – to provide off-street parking for their patrons. Bd. Dec. at 2, 5 & Ex. A.

Beginning in the fall of 2021, Oakmont became aware that owners desiring to bring new businesses to its Commercial District were unable to do so, although the proposed businesses were permitted uses as of right, because they could not comply with the zoning ordinance's off-street parking requirements. RR at 108a-14a. In Ordinance No. 1-2023, Oakmont amended the zoning ordinance to allow public parking spaces to count toward fulfilment of the zoning ordinance's parking requirements under certain conditions.[3] *Id.* at 84a-86a & 188a. For conditional uses, on-street parking can count toward the parking requirement "when a traffic study supports that traffic congestion and/or parking concerns will not be created and all other parking requirements under Article VIII [of the zoning ordinance] are met." RR at 84a; Bd. Dec. at 2 (additional quotation marks omitted).

---

[2] OAKMONT, PA., CODE OF THE BOROUGH OF OAKMONT, § 205-802 (2011).

[3] The signed text of Ordinance No. 1-2023 can be found online on Oakmont's website at https://oakmontborough.com/wp-content/uploads/O1-of-2023-Parking-Ordinance-Amendment.pdf (last visited November 5, 2024).

2

For uses by right, public parking can count toward the parking requirement "when the on-street spaces are located within 300 feet of a property line and in the Commercial District." Bd. Dec. at 3 (additional quotation marks omitted).

Keefe brought a substantive validity challenge to Ordinance No. 1-2023, asserting that it is (1) unconstitutionally vague, (2) arbitrary and unreasonable with no substantial relationship to the public health, safety, and welfare, and (3) improper special legislation. RR at 10a-19a; *see also id.* at 3a-5a (listing the same three issues as those brought before the Board and asserting the same three issues before the Common Pleas Court). Keefe did not assert a written challenge to the amendment's procedural validity. *See generally id.* at 10a-19a. However, Keefe's counsel cross-examined witnesses during the hearing before the Board concerning the Planning Commission's input in the enactment process and included that issue in Keefe's proposed findings and conclusions submitted after the hearing. *See* Bd. Dec. at 1 n.1; RR at 109a-10a, 219a-20a, 842a-44a, 850a & 855a.

The Board held a hearing on May 23 and June 27, 2023. *See generally* RR at 90a-251a & 877a-920a. At the conclusion of the hearing, the Board voted unanimously[4] to deny Keefe's substantive validity challenge to Ordinance No. 1-2023. *Id.* at 919a. Keefe appealed to the Common Pleas Court, which affirmed the Board's decision without taking additional evidence. This appeal followed.[5]

---

[4] Board Member David Lowry recused himself at Keefe's request. RR at 240a-42a. Board Chair Joseph Luciana also recused himself. *Id.* at 242a; Bd. Dec. at 2. Accordingly, Board Member Charles Fisher and Alternate Member Donald Kaplan presided at the hearing in order to form a quorum. Bd. Dec. at 2.

[5] Because the Common Pleas Court took no additional evidence, this Court's review on appeal is limited to determining whether the Board committed an error of law or abused its discretion. *See Lamar Advantage GP Co., LLC v. City of Pittsburgh Zoning Bd. of Adjustment*, 244 A.3d 348, 354 (Pa. 2021).

3

## II. Issues

Keefe asserts five issues on appeal, which we reorder as follows. First, Keefe asserts that the Board applied an incorrect standard of review in adjudicating his substantive challenge to the ordinance. Further, Keefe contends that the Common Pleas Court ignored procedural defects in the enactment of Ordinance No. 1-2023 and failed to recognize that some testimony was untrue. Keefe also asserts that Ordinance No. 1-2023 is unconstitutionally vague, in violation of constitutional due process requirements; unconstitutional as special legislation; and arbitrary and unreasonable with no substantial relationship to the public health, safety, and welfare, in violation of constitutional equal protection requirements.

## III. Discussion

### A. The Board's Standard of Review

Keefe posits that the Board failed to apply the proper legal standard of substantive due process analysis in rendering its decision on Keefe's validity challenge to Ordinance No. 1-2023. Keefe bases this argument on two assertions: first, that the Board's introductory summary in its opinion was inaccurate; and second, that Lowry's recusal indicated bias by the entire Board that calls the whole proceeding into question. Br. of Appellants at 39-42. We reject both bases of this argument.

In the second paragraph of its opinion, the Board stated: "To summarize this case, [Keefe] is an established landowner/business operator in the [Oakmont] Commercial District who believes that the [a]mendment makes it easier for competitors to enter the Commercial District because it relaxes certain parking requirements." RR at 1035a. Keefe contends that this "summarization is factually

4

incorrect as the [validity c]hallenge was solely based on the identified legal deficiencies of . . . Ordinance No. 01-2023 . . . ." Br. of Appellants at 40. We disagree. The Board's statement is plainly accurate, as evidenced by Keefe's express claim, discussed further below, that Oakmont was discriminately targeting Keefe by enacting Ordinance No. 1-2023 to favor specific new businesses entering Oakmont. Further, we perceive nothing in this accurate statement of Keefe's position that suggests the Board failed to apply a proper due process analysis in its decision.

Lowry's recusal likewise fails to support Keefe's position. Lowry recused himself at Keefe's request. RR at 240a-42a. The Board's Chair had recused himself earlier. *Id.* at 242a. The remaining Board member, along with its alternate member, comprised a quorum to conduct the hearing and render the decision. *Id.* at 242a & 449a. Keefe made no objection to the conduct of the hearing by the remaining Board member and alternate. Had Keefe believed that those two Board members were biased or otherwise not properly qualified to proceed, he could have requested additional recusals or otherwise objected to the conduct of the hearing, but he did not do so. Only Lowry was asked to recuse himself, and he immediately complied following a discussion with counsel in executive session. RR at 240a-42a. Having made no other objection to the composition of the Board for purposes of the hearing, Keefe has not preserved this issue for appeal. *See In re McGlynn*, 974 A.2d 525, 534 (Pa. Cmwlth. 2009) (failure to raise an issue before a zoning hearing board results in waiver, and the issue cannot be considered on review by this Court) (citing *Mack v. Zoning Hearing Bd. of Plainfield Twp*., 558 A.2d 616 (Pa. Cmwlth. 1988)).

For these reasons, we reject Keefe's assertion of error regarding the Board's standard of review.

5

**B. Procedural Issues and Alleged Perjury**

Keefe asserts that the Board improperly ignored procedural defects in the enactment of Ordinance No. 1-2023 and "perjury" by Scot Fodi, Oakmont's Borough Manager and Zoning Officer (Fodi), in testifying concerning that process at the hearing, *see infra* at 10 n.9. Br. of Appellants at 36-39. Keefe insists that Oakmont's purportedly improper enactment process relating to consideration of a comment letter from the county and Fodi's purportedly untrue testimony relating to the comment letter "illustrate a pattern of arbitrary and capricious conduct that is unrelated to the public health, safety, or welfare of the residents of Oakmont . . . ." *Id.* at 36. Through this argument, Keefe is asserting a challenge to the process of enacting Ordinance No. 1-2023. That challenge is both improper and untimely.

Keefe initially filed a written challenge with the Board *only* to the *substantive* validity of Ordinance No. 1-2023; Keefe did not assert a written challenge to the amendment's procedural validity. *See generally* RR at 10a-19a. Later, however, Keefe sought to assert a procedural challenge verbally during the hearing before the Board and included it in proposed findings and conclusions submitted after the hearing. *See* Bd. Dec. at 1 n.1. Such a challenge must be brought in a court of common pleas, not before a zoning hearing board. Section 1002-A(b) of the Pennsylvania Municipalities Planning Code,[6] 53 P.S. § 11002-A(b); *Messina*

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. Section 1002-A was added by the Act of December 21, 1988, P.L. 1329, No. 39. Section 1002-A(b), effective July 4, 2008, states:

> Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the

*v. E. Penn Twp.*, 995 A.2d 517, 530 (Pa. Cmwlth. 2010), *aff'd*, 62 A.3d 363 (Pa. 2012). A procedural challenge, therefore, has not been preserved and is not properly before this Court.

Moreover, Section 5571.1(b)(1) of the Judicial Code[7] requires that "[a]ny appeal raising questions relating to an alleged defect in statutory procedure shall be brought within 30 days of the intended effective date of the ordinance." 42 Pa.C.S. § 5571.1(b)(1); *see also Bartkowski Inv. Grp., Inc. v. Bd. of Comm'rs of Marple Twp.*, 18 A.3d 1259, 1263 (Pa. Cmwlth. 2011). Here, the effective date of Ordinance No. 1-2023 was on or about March 20, 2023.[8] Keefe, however, did not first raise issues implicating any procedural challenge until the hearing before the Board on May 23, 2023, more than 30 days after the effective date of Ordinance No. 1-2023. *See* Bd. Dec. at 1 n.1.

Section 5571.1(b)(2) of the Judicial Code provides a potential mechanism for an untimely challenge to the enactment process of an ordinance as follows:

---

ordinance is located in accordance with 42 Pa.C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.).

53 P.S. § 11002-A(b).

[7] 42 Pa.C.S. §§ 101-9913.

[8] Keefe's proposed findings of fact averred that the adoption date was March 30, 2023, and later averred that the date was March 20, 2023. RR at 838a. The correct adoption date is March 20, 2023. Borough of Oakmont, Pa., *Ordinances & Resolutions Archive, 2023 Ordinances Recently Adopted*, *01 of 2023, Parking Ordinance Amendment*, available online at https://oakmontborough.com/wp-content/uploads/O1-of-2023-Parking-Ordinance-Amendment.pdf (last visited November 5, 2024). Paragraph IV of Ordinance No. 1-2023 provides, "This Ordinance shall be effective upon adoption by the Borough Council and recording in the Borough Ordinance Book." *Id.* The Borough Secretary signed and sealed Ordinance No. 1-2023 as having been recorded in the Ordinance Book but did not fill in the recording date. *See id.* However, Keefe has not alleged any material delay in the recording of Ordinance No. 1-2023, and his counsel conceded at oral argument that the effective date was on or about March 20, 2023.

7

> (2) In the case of an appeal which is exempt from the 30-day time limitation in accordance with subsection (c), the party alleging the defect must meet the burden of proving each of the following:
>
> > (i) That there was a failure to strictly comply with statutory procedure.
> >
> > (ii) That there was a failure to substantially comply with statutory procedure which resulted in insufficient notification to the public of impending changes in or the existence of the ordinance, so that the public would be prevented from commenting on those changes and intervening, if necessary, or from having knowledge of the existence of the ordinance.

*Bartkowski*, 18 A.3d at 1264 (quoting 42 Pa.C.S. § 5571.1(b)(2) (quotation marks omitted)). Here, however, Keefe's procedural challenge focused on a comment letter from Allegheny County to Oakmont, not notice to the public. *See* RR at 842a-44a, 850a & 855a. Therefore, the exception in Section 5571.1(b)(2) does not apply. Accordingly, Keefe's challenge to the enactment process was untimely and has not been preserved for appeal.

For these reasons, we reject Keefe's argument concerning procedural defects in the enactment of Ordinance No. 1-2023.

### C. Vagueness

Regarding his assertion that Ordinance No. 1-2023 is impermissibly vague, Keefe observes that "[a] law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Br. of Appellants at 24 (quoting *Fabio v. Civ. Serv. Comm'n of City of Phila.*, 414 A.2d 82, 84 (Pa. 1980)) (additional quotation marks omitted). This vagueness argument is based on due process requirements under both the

Pennsylvania and United States constitutional equal protection provisions. *See* U.S. CONST. amend. XIV (providing, in pertinent part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of . . . property, without due process of law; nor deny to any person . . . the equal protection of the laws . . ."); Pa. Const. art. III, § 32 (providing, in pertinent part, that "[t]he General Assembly shall pass no local or special law in any case which has been or can be provided for by general law . . ."); *St. Margaret Mem'l Hosp. v. Borough Council of Aspinwall*, 641 A.2d 1270, 1272 (Pa. Cmwlth. 1994) (explaining that "[t]he Pennsylvania Supreme Court has adopted the standards and analysis of the United States Supreme Court in order to interpret and apply the equal protection provisions of the Pennsylvania Constitution") (citing *Commonwealth v. Parker White Metal Co.*, 515 A.2d 1358 (Pa. 1986)).

Here, Keefe maintains that Ordinance No. 1-2023 is improperly vague and thereby violates due process requirements in two ways: (1) it appears to give both the Planning Commission and the Borough Council the right to determine whether on-street parking will count toward the parking requirements related to a conditional use, and (2) it provides "no clear standards or definitions as to what 'traffic congestion' or 'parking concerns' actually mean as applied." Br. of Appellants at 25. Keefe relies on the expert testimony of Joseph Haydo (Haydo), a traffic engineer, and Steven Victor (Victor), a landscape architect, regarding his assertions of vagueness. *See* Br. of Appellants at 25-27. Neither assertion of vagueness has merit.

Victor opined that the zoning ordinance confusingly gives both the Planning Commission and the Borough Council the same right to determine when

9

and how to count on-street parking in relation to a conditional use. Br. of Appellants at 25. However, quoting specific provisions of the zoning ordinance, the Board found as a fact that "[i]t is Borough Council that determines whether or not to allow a conditional use to count on-street parking spaces toward the fulfillment of its parking requirements." Bd. Dec. at 6; *see also id.* at 10-11 (quoting OAKMONT, PA., CODE OF THE BOROUGH OF OAKMONT, § 205-1503.B(5), (6) & (10) (2014), and concluding that "the role of the Borough Planning Commission is recommendatory only . . ." and that Borough Council has exclusive jurisdiction over conditional use determinations); RR at 124a, 182a & 447a. Moreover, the Board found that in Victor's testimony, "cross[-]examination . . . reveal[ed his] direct testimony to be exaggerated or misleading [and] the most credible testimony . . . supported the validity of [Ordinance No. 1-2023]." Bd. Dec. at 4. The Board also credited Fodi's testimony as "truthful."[9] *See id.*

---

[9] Keefe argues that the Board committed an "abuse of discretion" and an "error of law" in this credibility finding, in that Fodi admitted on cross-examination that his statement on direct examination that Allegheny County had no comment on Ordinance No. 1-2023 was not true. Br. of Appellants at 35; *see also* RR at 884a-86a (oral argument at the Board hearing, interpreting a county letter as advising a traffic study relating to the parking provisions in amending the zoning ordinance). Keefe insists that "Fodi has no credibility" and that his testimony "should have been stricken in its entirety by the Board from its consideration as *falsus in uno, falsus in omnibus*" (false in one thing, false in everything). Br. of Appellants at 35. However, the law is settled that "questions of credibility are solely within the province of the [Board], and the [Board] is free to accept or reject the testimony of any witness, in whole *or in part*." *Se. Chester Cnty. Refuse Auth. v. Zoning Hearing Bd.*, 898 A.2d 680, 687 (Pa. Cmwlth. 2006) (emphasis added) (citing *Domeisen v. Zoning Hearing Bd.*, 814 A.2d 851 (Pa. Cmwlth. 2003)). Moreover, in response to a question from a Board member, Fodi explained that Allegheny County's letter did not clearly state whether its comment concerning a traffic study was "providing some guidelines for how the traffic study would be performed once the ordinance would pass, or . . . saying, a traffic study should be performed in conjunction with the drafting and potential passing of the ordinance." RR at 905a. Thus, Keefe has not established that the county's comment or Fodi's testimony concerning that comment was material to the Board's decision on his substantive validity challenge, and the Board was not required to reject Fodi's testimony as a whole on the basis that he acknowledged making

10

Victor further opined that the definitions of traffic congestion and parking concerns should be controlled by the language of the zoning ordinance itself. Br. of Appellants at 26. Keefe insists the Common Pleas Court ignored Victor's testimony in this regard. *Id.* at 27.[10] However, as stated previously, the Board rejected Victor's testimony as not credible. Moreover, there was contrary evidence in the record before the Board. First, the zoning ordinance itself requires that an applicant demonstrate through a traffic study that its proposed business will not result in traffic congestion or parking concerns. Bd. Dec. at 2. In addition, Haydo acknowledged his understanding that "traffic congestion" is a traffic engineering industry standard. RR at 153a. When asked on cross-examination whether he believed that the implementation of Ordinance No. 1-2023 in relation to new businesses would increase traffic congestion in Oakmont's Commercial District, Haydo was careful to clarify his opinion that new business "only has the *potential* to increase traffic . . . ." RR at 154a (emphasis added). Further, he conceded that his expressed concerns were "theoretical" and not based on actual observation or traffic study in Oakmont, and that the effect of a new business on traffic "depends on use." *Id.* at 144a, 146a-47a, 156a & 164a. Haydo testified that the Pennsylvania Department of Transportation (PennDOT) has adopted a grading system for state roads, which is followed by most municipalities. RR at 152a. Haydo also acknowledged that, because the terms "traffic congestion" and "grading system" are

a statement regarding the county's lack of comment that was not accurate. Therefore, we discern no error of law or abuse of discretion in the Board's credibility determination.

[10] As our review is of the Board's decision, Keefe's argument is more properly asserted as error by the Board rather than the Common Pleas Court. *See RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216, 1224 (Pa. Cmwlth. 2024) (citing *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 887 (Pa. Cmwlth. 2015), and explaining that "because we review the [B]oard's decision, we do not address arguments challenging the [Common Pleas C]ourt's decision").

11

industry standards used by traffic engineers and there are national standards for traffic studies, application of those standards by different traffic engineers should yield consistent traffic study results. RR at 153a & 165a-66a. Based on these aspects of Haydo's testimony, Oakmont asserts that "[b]ecause the term 'traffic congestion' is an industry standard term, the Ordinance clearly does not require businesses in the Borough to guess its meaning." Br. of Oakmont at 11. We agree.

Evaluation of the weight of the evidence and the credibility of witnesses, including expert witnesses, was exclusively within the Board's authority. This Court has explained that

> [the B]oard's function is to weigh evidence, and it is the sole judge of the credibility and weight of the witnesses' testimony. [*SPC Co. v. Zoning* [*Bd.*] *of Adjustment of the City of Phila*[.], 773 A.2d 209, 214 (Pa. Cmwlth. 2001).] [The B]oard is "free to reject even uncontroverted testimony it finds lacking in credibility, including testimony offered by an expert witness." *Taliaferro v. Darby* [*Twp.*] *Zoning Hearing* [*Bd.*], 873 A.2d 807, 811 (Pa. Cmwlth. 2005). We must view the evidence in a light most favorable to the party that prevailed before the [B]oard and afford that party all inferences reasonably drawn from the evidence. . . .

*RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216, 1224 (Pa. Cmwlth. 2024). As the preceding paragraphs explain, the record contained substantial evidence that, as credited by the Board, was sufficient to support the Board's rejection of Keefe's vagueness argument. Accordingly, we may not disturb the Board's determination of those issues on appeal. *See id.* We reject Keefe's assertion that Ordinance No. 1-2023 is void as unconstitutionally vague.

## D. Special Legislation

Article III, section 32 of the Pennsylvania Constitution provides: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law . . . ." PA. CONST. art. III, § 32.[11] Legislation is "special" where it creates a classification on the basis of an artificial or irrelevant distinction. *See Harrisburg Sch. Dist. v. Hickok*, 761 A.2d 1132, 1136 (Pa. 2000) (explaining that "[t]he judicial function . . . with respect to classifications, is 'to see that the classification at issue is founded on real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition'"). Keefe asserts that Ordinance No. 1-2023 constitutes impermissible special legislation, in that it was aimed at discriminating specifically against Keefe, which owns the majority of businesses in Oakmont, and giving parking advantages to foster a particular new business. Br. of Appellants at 42-43. We discern no merit in this argument.

Oakmont presented evidence that, since the autumn of 2021, at least two businesses seeking to locate in Oakmont's Commercial District had been prevented from doing so by the parking requirements of the 2011 version of the

---

[11] Research did not reveal any appellate decision expressly holding that article III, section 32 applies to municipalities as well as to the General Assembly. However, our Supreme Court, in considering a prohibition on special legislation in the previous version of the Pennsylvania Constitution, applied it as prohibiting a local ordinance favoring one retired employee, observing that "[s]ince the Legislature may not authorize such a procedure, it naturally follows that a township board of commissioners may not do it on its own." *Francis v. Neville Twp.*, 92 A.2d 892, 893 (Pa. 1952). Moreover, this Court has previously applied article III, section 32 to local ordinances without distinguishing that section's application to legislation enacted by the General Assembly. *See generally, e.g.*, *Murrysville Watch Comm. v. Municipality of Murrysville Zoning Hearing Bd.* (Pa. Cmwlth., No. 579 C.D. 2020, filed Jan. 24, 2022); *Seneca Res. Corp. v. City of St. Marys Zoning Hearing Bd.* (Pa. Cmwlth., No. 136 C.D. 2020, filed Nov. 30, 2021). We cite these unreported opinions of this Court as persuasive, pursuant to Section 414(a) of our Internal Operating Procedures. 210 Pa. Code § 69.414(a); *see also* Pa.R.A.P. 126(b)(1)-(2).

zoning ordinance. RR at 108a-11a. One of those businesses had not opened in the Commercial District because its variance request regarding parking spaces had already been rejected before the enactment of Ordinance No. 1-2023; another had approached Fodi about a proposed laundromat but, after learning of the parking requirements, had "never returned." *See* RR at 109a-12a & 114a. Thus, the record does not indicate that either business benefitted from the enactment of Ordinance No. 1-2023. *See* RR at 123a (stating that no applications for conditional use approvals that would require traffic studies have been filed since the enactment of Ordinance No. 1-2023).

Further, Oakmont presented evidence that it was not targeting Keefe for discriminatory treatment. Fodi testified that neither the Planning Commission nor Borough Council ever raised any issue relating to Keefe's interests in considering Ordinance No. 1-2023.[12] RR at 220a & 229a. Fodi also explained that all previously established businesses in Oakmont, not only Keefe, must retain their existing parking spaces notwithstanding the enactment of Ordinance No. 1-2023. RR at 120a-21a. The Board was entitled to credit this testimony, which constituted substantial evidence in support of the Board's decision. *See, e.g.*, RR at 1042a (finding as a fact "that there was no evil motive or ill will . . ." in Oakmont's enactment of Ordinance No. 1-2023).

---

[12] Fodi acknowledged that in a conversation with Brian Clark (Clark) (whose position is not identified in the reproduced record) concerning state permits for a proposed parking lot project to be owned by Oakmont, Clark commented that John Keefe "ticked off a man with a lot of money." RR at 231a. Although John Keefe testified at one point that he believed Fodi was "ticked off because [John Keefe] challenged his authority . . ." in relation to a business called Taco Boys, RR at 215a, the record does not establish and the Board made no finding as to who the man referenced by Clark was or what, if any, connection Clark's comment had to the enactment of Ordinance No. 1-2023.

Accordingly, we will not disturb the Board's findings of fact, which adequately supported its conclusion that Ordinance No. 1-2023 did not constitute unconstitutional special legislation.

**E. Arbitrariness – Equal Protection**

An ordinance is presumptively valid; "[a] legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court." *Adams Outdoor Advert. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 477 (Pa. Cmwlth. 2006) (citing *Baker v. Upper Southampton Twp. Zoning Hearing Bd.*, 830 A.2d 600 (Pa. Cmwlth. 2003)). More specifically, a municipality's "exercise of judgment in regard to zoning regulations will not be interfered with except where there is obviously no relation to health, safety, morals or general welfare." *Ethan-Michael, Inc. v. Bd. of Supervisors of Union Twp.*, 918 A.2d 203, 210 (Pa. Cmwlth. 2007) (citing *Gladwyne Colony, Inc. v. Twp. of Lower Merion*, 187 A.2d 549 (Pa. 1963)).

Here, Keefe argues that Ordinance No. 1-2023 "is arbitrary and unreasonable and has no substantial relationship to public health, safety, morals, or general welfare . . . " and thereby violates equal protection principles. Br. of Appellants at 30 (first citing *St. Margaret Mem'l Hosp.*, 641 A.2d at 1272; and then citing *Verland C.L.A., Inc. v. Zoning Hearing Bd. of Twp. of Moon*, 556 A.2d 4 (Pa. Cmwlth. 1989)). As discussed previously, the Pennsylvania and United States Constitutions contain comparable equal protection provisions. *See* U.S. CONST. amend. XIV; PA. CONST. art. III, § 32; *Love v. Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991) (stating that "[t]he equal protection provisions of the Pennsylvania

15

Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution").

Keefe concedes that, in applying equal protection principles, "the Pennsylvania Supreme Court 'has determined that ordinances which provide parking restrictions involve neither suspect classes nor fundamental rights, and that the appropriate standard to be applied is the rational basis test.'" Br. of Appellants at 31 (first quoting *St. Margaret*, 641 A.2d at 1272; and then citing *Love*, 597 A.2d at 1139) (additional citation omitted). Under the rational basis test, a parking provision in a zoning ordinance is valid if it is directed at accomplishing a legitimate governmental interest in a manner that is not arbitrary or unreasonable. *Love*, 597 A.2d at 1139-40. Nonetheless, Keefe argues that Ordinance No. 1-2023 fails even the rational basis test. We agree.

As explained above, Oakmont learned that new businesses were unable to open in Oakmont's Commercial District because there was no way to comply with the zoning ordinance's off-street parking requirements without tearing down an existing building. RR at 108a-14a. Through Ordinance No. 1-2023, Oakmont allowed public parking spaces to count toward fulfilment of the zoning ordinance's parking requirements but also imposed certain conditions, such as a traffic study showing that the proposed new business will not create traffic congestion or parking concerns. Bd. Dec. at 2.

Keefe points to the testimony of its expert witnesses, who opined that the implementation of Ordinance No. 1-2023 will result in inadequate parking, create or add to traffic congestion, and negatively impact pedestrian safety, thereby having a "negative impact on the health, safety, and welfare of Oakmont. Br. of

Appellants at 32. However, it was Oakmont's function and prerogative to balance interests in fostering new businesses with interests in traffic and pedestrian safety. *See Frederick v. Allegheny Twp. Zoning Hearing Bd.*, 196 A.3d 677, 700-01 (Pa. Cmwlth. 2018) (observing that "[a] municipality balances the interest of landowners in the use and enjoyment of their property with the public health, safety and welfare of the community when it enacts land use regulation . . .") (citing *In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 727-28 (Pa. 2003)). In amending the zoning ordinance to relax parking requirements for new businesses, Oakmont permissibly balanced the interest in promoting new businesses in its Commercial District with safety interests by requiring applicants for new businesses to demonstrate that their proposals will not adversely affect safety and traffic congestion. Ordinance No. 1-2023 is not constitutionally infirm in balancing these two competing interests but, rather, violates equal protection principles because it arbitrarily fails to treat new businesses and existing businesses similarly.

In *Atlantic Richfield Co. v. Erie Zoning Board of Adjustment*, 43 Pa. D. & C.2d 504 (1967), the Court of Common Pleas of Erie County sustained an equal protection challenge to a zoning ordinance that required the entrance and exit of a gasoline service station to be at least 200 feet from a school. The court determined that the requirement was founded solely on traffic congestion concerns but did not similarly burden other businesses that would generate as much or more traffic; therefore, it was unconstitutional. *Id.* at 510 & 512. We find the common pleas court's reasoning in *Atlantic Richfield* persuasive here. Ordinance No. 1-2023 is similarly discriminatory in that it treats existing and new businesses differently even if they generate the same amount of traffic.

17

*Allegheny County v. Monzo*, 500 A.2d 1096 (Pa. 1985), although not factually on point, is also instructive. In *Monzo*, our Supreme Court held that a county ordinance imposing a hotel room tax on hotels throughout Allegheny County was unconstitutional where its purpose was to fund a convention center in Pittsburgh that would provide a practical benefit only to those hotels in close proximity to the planned convention center. *Id.* at 1106. The constitutional issue in *Monzo* concerned tax uniformity rather than equal protection, but as the Court observed, "[*t*]*he standards of the uniformity clause and of the equal protection clause are identical*." *Id.* (emphasis added). As such, the test of constitutional validity is whether there is a reasonable distinction and difference between the classes burdened by the ordinance sufficient to justify different treatment. *Id.* In concluding that the ordinance in *Monzo* violated constitutional rights to equal treatment, our Supreme Court agreed with the trial court's statement that the countywide hotel room tax was "an arbitrary form of classification, an appropriation of money from one group to the benefit of another, [and] that it is unequal in its operation or effect upon similar businesses . . . ." *Id.* (additional quotation marks omitted).

The principles articulated by our Supreme Court in *Monzo* apply equally here. Ordinance No. 1-2023 allows a new business to count public parking spaces toward its parking space requirement under the zoning ordinance if it meets the applicable conditions, *i.e.*, a satisfactory traffic study report for a conditional use and proximity to the public parking spaces for a permitted use. However, an existing business cannot obtain the same benefit, even if it meets the same conditions. Oakmont has not offered any rational basis for discriminating by benefitting new businesses and burdening existing ones with respect to parking space requirements, and this Court perceives none. Like the ordinance in *Monzo*, Ordinance No. 1-2023

18

imposes an arbitrary form of classification, essentially appropriates money from one group to the benefit of another, and operates upon and affects similar businesses differently. *See Monzo*, 500 A.2d at 1106. This is because Ordinance No. 1-2023 arbitrarily classifies new businesses and existing businesses differently with regard to the parking space requirements imposed upon them, without any rational basis, and thus affects new and existing businesses differently even if they are similar in nature. In addition, by requiring existing businesses to incur the cost of maintaining private parking, but allowing new businesses to avoid similar requirements, Ordinance No. 1-2023 forces existing businesses to bear the costs of lessening parking congestion and then allows nearby new businesses to capitalize on the benefit of that reduced congestion in establishing the sufficiency of their own parking compliance.

For these reasons, we conclude that Ordinance No. 1-2023 arbitrarily and unconstitutionally denies equal protection of the law to existing businesses in Oakmont, including Keefe. Therefore, Ordinance No. 1-2023 is invalid.

## IV. Conclusion

Based on the foregoing discussion, we conclude that Ordinance No. 1-2023 is invalid as violative of constitutional equal protection principles. Accordingly, the Common Pleas Court's order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Keefe, CHIBS, Inc., d/b/a | : | |
| Carnivores Sports Bar, TWID 365, | : | |
| LLC, d/b/a The Pub at 333, The J. | : | |
| Keefe Co., LLC d/b/a The Lot of | : | |
| Edgewater, Co 83, LLC, d/b/a | : | |
| Hoffstots Cafe' Monaco, MR 2021, | : | |
| LLC, OOWH, LLC, d/b/a Vinnie's | : | |
| Tavern, Oakmont Saloon, LLC, | : | |
| Mangia Italiano, LLC, and | : | |
| Hoff & Lots Holdings Co., LLC, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Borough of Oakmont Zoning Hearing | : | No. 201 C.D. 2024 |
| Board and Borough of Oakmont | : | |

# **O R D E R**

AND NOW, this 6th day of November, 2024, the order of the Court of Common Pleas of Allegheny County dated February 21, 2024 is REVERSED. Ordinance No. 1-2023 of the Borough of Oakmont is hereby declared to be invalid.

_____
CHRISTINE FIZZANO CANNON, Judge